# 𝔖taunton

FRED V. VANCE v. MAYTAG SALES CORPORATION AND
W. W. McBRIDE.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*W. H. Robertson, George M. Warren* and *H. E. Widener,* for the plaintiff in error.

*Morton & Parker* and *W. H. Rouse,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The plaintiff in error instituted his action at law against the defendants in error, for fraud and deceit, a pure tort. After the evidence had been introduced, a demurrer to the evidence was interposed by the defendants in error. Later the jury returned a verdict for the plaintiff in error for $2,820.00, subject to the ruling of the court on the demurrer

to the evidence. The court sustained the demurrer and entered judgment for the defendants in error.

Vance, the plaintiff in error, who was a resident of the city of Bristol, Tennessee, was issued what is denominated in the record as a "Dealer's Franchise" to sell Maytag washing machines in the counties of Giles, Pulaski, Wythe, Bland, Carroll and Grayson, all in Virginia. The franchise was executed on January 20, 1927, by the Maytag Company, a Delaware corporation of the one part, and Fred Vance, trading as the Vance Maytag Company, of the other part. It was also signed by W. W. McBride, district manager. The franchise granted to Vance the exclusive right to sell Maytag washing machines in the six counties designated.

The Maytag Company manufactured the washing machines at Newton, Iowa, and at the time the franchise was signed, sold them through divisional managers to the local dealers, after issuing to them the "Dealers Franchise." The dealer would purchase the machines from the Maytag Company, in Newton, Iowa, in car-load lots and then sell them by retail in his territory.

Before Vance began operations as a dealer, he, together with H. H. Galloway and Henry Doriot, secured a charter of incorporation under the name of "The Vance Maytag Company, Incorporated," with a capital of $5,000.00 which was represented by $3,000.00 paid in by Vance and $1,000.00 paid in by each of the others. Very soon after the formation of The Vance Maytag Company, Incorporated, Vance turned over to that corporation the franchise he had previously secured from the Maytag Company, and thereafter The Vance Maytag Company, Incorporated, conducted the business of selling the washing machines under the franchise in the territory designated. The organization being completed, business operations began on March 27, 1927.

The Maytag Company decided to conduct its selling business through a subsidiary corporation instead of selling through the divisional managers and in furtherance of this purpose the Maytag *Sales* Corporation, another Delaware

corporation, came into existence on November 28, 1927. This last corporation assumed none of the contracts, obligations or liabilities of the Maytag Company. McBride, however, was employed by the Maytag Sales Corporation, under an independent contract. The Maytag Sales Corporation, under the new arrangement, purchased the output of the Maytag Company, at Newton, Iowa, and upon receiving orders, directed the Maytag Company, to ship the machines direct to the dealer, with invoice and bill of lading attached.

Under one of the provisions of the "Dealers Franchise," it could be cancelled. Accordingly, some time in the latter part of 1927, it was cancelled, and on January 1, 1928, a new "Dealer's Franchise" was entered into by the Maytag *Sales* Corporation and The Vance Maytag Company, Incorporated, wherein the exclusive sales rights in the same six counties were granted. The Vance Maytag Company, Incorporated, operated under this last franchise from January 1, 1928, until this action was brought by Vance, individually, on July 27, 1929.

The plaintiff in error, Fred V. Vance, in his individual right, on March 19, 1929, instituted an action for fraud and deceit, against the Maytag Company, a foreign corporation, and W. W. McBride, but the service of the notice upon McBride was void and of no effect because it was not returned to the clerk's office within the time required by statute. Later other notices were reissued and one was properly served on McBride on July 27, 1929. It was contended in the trial court that McBride was an agent of the Maytag Company and that service upon him was effectual to bring that company into court. It appeared specially and upon a hearing upon pleas in abatement filed by it, the trial court held that McBride was not in fact the agent of the Maytag Company, and ordered the officer's return quashed. Later a carload of washers was attached in Bristol and the Maytag *Sales* Corporation on November 6, 1929, made itself a party to the instant action by an appearance in that proceeding. The Maytag Company, not having been properly be-

fore the court, the action proceeded against McBride and the Maytag Sales Corporation.

Pleas of the general issue, and grounds of defense, were filed and a special plea of the statute of limitations as to each defendant was also filed on the day of trial but before the trial actually commenced.

From the notice of motion for judgment it is obvious that this action was entirely based upon an alleged false and fraudulent promise made by McBride to Vance, which induced the latter to enter into the first "Dealers Franchise" on January 20, 1927. Substantially it was alleged in the notice that McBride, while the agent of the Maytag Company, urged Vance to enter into the franchise agreement for the six counties previously mentioned and promised that if Vance would enter into the franchise, he would be given, in addition to the six counties named, Montgomery and Craig counties as soon as Vance "opened up for business, and as much additional territory as he wanted as soon as his organization was complete." It was also alleged that "defendants did not intend when the promise of additional territory was made to comply with it."

On motion of the defendants, in the court below, Vance, the plaintiff there, was required to elect whether he would proceed in the action on contract or in tort, and he elected to have the action treated as an action in tort. The court, by order, was "of opinion that this is an action in tort for fraud and deceit" and directed that it be proceeded in as such.

There was evidence that the promise above referred to was made to Vance by McBride. Vance testified that he was "to get Montgomery county and Craig county as soon as I got up there, and was to get all the additional territory I could work after I got that developed." It is conclusively shown that The Vance Maytag Corporation opened for business March 27, 1927, but that Montgomery and Craig counties were never added to the territory originally granted.

When the introduction of evidence had been completed the defendants interposed a demurrer to the evidence assigning ten grounds, but it will be unnecessary to discuss all of them. The material points raised in the grounds of demurrer are:

1st. That the evidence shows that if any damage has been sustained by any one by reason of the plaintiff having entered into the franchise agreement of January, 1927, it was sustained by The Vance Maytag Company, Incorporated, which is not a party to this action.

2nd. That the evidence fails to show that the Maytag Sales Corporation was in any way interested in the first franchise of January, 1927; that it was not in existence at the time the promise was made and that since it has come into existence, it has not assumed any obligations, rights or torts of the Maytag Company, nor has it approved or ratified any promise that McBride or the Maytag Company may have made; that its rights and liabilities are controlled by the second franchise of January, 1928.

3rd. That the evidence shows that the plaintiff's right of action accrued more than a year previous to the institution of this action and is therefore barred by the statute of limitation pleaded herein.

The trial court sustained the demurrer to the evidence, holding that there was no evidence which would justify a finding against the Maytag Sales Corporation and it would have been proper to have sustained a motion to abate as to that defendant. It further held that there was no competent evidence to show that any damage was suffered as a result of the breach of the false promise. It then held that in any event the plea of the statute of limitations was sustained by the evidence and inasmuch as the action had not been instituted within a year after the promise was made, or within a year after the fraud was discovered, it constituted a bar to the action.

Counsel for plaintiff in error earnestly contend that the ruling of the trial court upon the demurrer to the evidence

was erroneous and they assign as error nearly every ruling which the trial court made against the plaintiff in error.

The first and third assignments of error are that the court should have held that the Maytag Company was properly a party defendant by reason of the service of the notice upon McBride. From our view of the case it may be assumed that the Maytag Company is properly before the court and was brought in by the service had upon McBride as an agent. The decision of this court would necessarily be the same whether we consider the Maytag Company a party or not. It is not necessary to discuss these assignments, because we do assume for the purpose of a decision of this case that it is properly before the court.

The second assignment is not material. The point is made that the court should not have dissolved a certain attachment which had been levied on a carload of washers and that it should have impounded the bill of lading for the car. A consideration of this point is not necessary to a decision of the case.

■■ The fourth error assigned is that the court should not have allowed the defendants to file their pleas of the statute of limitations on the day of the trial. The pleas were filed over the objection of the plaintiff in error, on the day of trial but before the trial had actually commenced. The filing of pleas is a matter within the sound discretion of the trial court. The record does not indicate that the court abused its discretion in connection with the filing of the pleas. We find no merit in the assignment.

The point raised in the sixth assignment regarding the refusal of the court to permit a certain letter to be introduced in evidence has no bearing upon the ultimate conclusion of the court.

■ The fifth, seventh and eighth assignments may be taken together and they bring to attention the pivotal points in the case. Does an action of this nature become barred by the statute of limitations within one or five years after it has accrued? If the one year statute applies, and we

think it does, then it is not necessary to discuss any of the other points raised in the petition. However, if the one year statute does not apply there are two valid reasons why the plaintiff in error is not entitled to recover in this action. The first reason is that the evidence conclusively shows that no right of action existed in Vance, individually, to institute this action. If any right of action existed, and if it were assignable, it belonged to The Vance Maytag Company, Incorporated, and not to Vance. The second reason is, that no competent evidence of any damages sustained by the plaintiff in error was introduced.

It will be recalled that almost immediately after Vance procured the first franchise, he transferred all of his rights thereunder to The Vance Maytag Company, Incorporated, and that corporation possessing Vance's rights, if he had any, should have been the plaintiff in the action, if this cause of action was assignable. If it was not assignable then the one year statute of limitation bars Vance's action here.

The record fails to show that Vance has proven any damages with sufficient certainty to justify a verdict in his favor, but aside from these two considerations we are content to affirm the judgment of the lower court upon the proposition that for the cause of action here asserted the one year statute of limitation applied.

It will be recalled that the whole case of the plaintiff in error was based on an alleged false promise made to him by McBride which induced him to enter into the first franchise agreement of January 20, 1927. He alleged in his notice the promise made that he would be given Montgomery and Craig counties as soon as he "opened up for business" and as much additional territory as he would want, as soon as his organization was complete. Neither these two counties nor any additional territory was given him when he "opened up for business" on March 27, 1927, and acocrding to his testimony, the promise on that date was violated. When he was not given the additional

territory on March 27, 1927, he was bound to have known, at that time, that the promise had been broken, and his cause of action, if any he had, then arose. But if we assume that he did not know at that time that the promise had been broken and if his cause of action did not then arise, the subsequent correspondence clearly shows that he would not be given any additional territory. This is shown from the letters of McBride to Vance, and Cameron, assistant divisional manager to Vance, both of which antedated the time when the action was instituted by more than a year. In addition to what has been said in this connection a new franchise agreement was entered into by The Vance Maytag Company, Incorporated, and the Maytag Sales Corporation on January 1, 1928, and the old franchise was cancelled. In this new franchise, the same six counties were granted, but still Montgomery and Craig and additional territory was withheld. At this time Vance knew that he would not obtain those counties and therefore was bound to know that the promise had been broken and that this cause of action had arisen. The action not having been instituted as to McBride until July 27, 1929, and as to Maytag Sales Corporation until November 6, 1929, more than a year had elapsed between the time he had actual knowledge of the fraud (certainly from January 1, 1928, when the new franchise was granted) and the time the action was instituted.

From our view, which has already been expressed, that the one year statute of limitation is applicable to the present action, it becomes unnecessary to decide in this case the question of whether the statute begins to run from the time the fraud is committed or from the time of its discovery, for in either event, in this case, more than one year had expired, whether it be computed from the time of its commission or from the time of its discovery to the time of the institution of the action.

Section 5818 of the Code provides that "every personal action, for which no limitation is otherwise prescribed, shall

be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and, if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued."

In *Winston* v. *Gordon*, 115 Va. 899, 80 S. E. 756, 762, Keith, P., quoting from Graves on Pleading, says:

"Prof. Graves, dealing with this subject, and more particularly with respect to the right of assignees of actions for torts, says 'that actions *ex delicto* (torts) are frequently assignable in equity, there can be no doubt; and at law the assignee can sue in the name of the assignor, as was done on the assignment of a bond. But all actions *ex delicto* are not assignable, even in equity, for it is sometimes considered against public policy, even in our day, to allow such an action to be made over to an assignee for money. Then what tort actions are assignable? The answer is such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. An action for breach of promise of marriage does not survive at common law, nor under the Virginia statute." (Graves on Pleading, page 16.)

In that same case Keith, P., quoting from *Burks' Pleading and Practice*, section 220, says:

"Whether the limitation to be applied in a particular case is a tort or contract limitation, where either may be brought, is determined by the object of the action and not simply by its form. If the injury sought to be redressed is merely personal, whether resulting from breach of contract or from tort, the action dies with the person and the tort limitation applies." Citing *Grubb, Adm'r* v. *Sult*, 32

Gratt. (73 Va.) 203, 34 Am. Rep. 765; *Birmingham* v. *C. & O. Ry. Co.*, 98 Va. 548, 37 S. E. 17.

In *Cover* v. *Critcher*, 143 Va. 357, 130 S. E. 238, 240, a case in point and controlling here, it was said:

"If the action we are here considering is one involving a matter of such a nature that, in case of the death of a party, the right of action would survive to his personal representative, then the five year period of limitation applies; if it is not of such a nature, then the one year period applies.

"The answer to this question is found in section 5385 of the Code which declares: 'An action of trespass, or trespass on the case, may be maintained by or against a personal representative for the taking or carrying away any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent.'

"The answer, however, is not sufficiently clear to avoid the necessity for construction of this latter section.

"The statute declares that the right of action survives for the taking or carrying away of any goods, or for the waste or destruction of, or damage to, any estate of or by his decedent. It will be well to recall here that the instant case is one on which the defendant is charged, through fraud and misrepresentation, with inducing the plaintiff to enter into a contract for the purchase jointly with defendant of a large tract of land, and that the alleged damages suffered by plaintiff resulted from these misrepresentations which resulted in the loss of the use of his property, 3,800 cords of bark, etc.

"The case of *Mumpower* v. *Bristol*, 94 Va. 737, 27 S. E. 581, was an action of trespass on the case for maliciously, and without probable cause, suing out an injunction and thereby causing the plaintiff to lose the use of his mill and the profits therefrom for nearly two years. The action was instituted two years after the commission of the alleged wrong. The statute of limitations (one year) was pleaded. The court, in passing upon the question raised by the plea,

said: 'The wrongful act which the defendant is alleged to have committed and for the injury resulting from which the plaintiff sues, consisted in maliciously, and without probable cause, suing out an injunction against the plaintiff whereby the operation of his mill was suspended. It is quite obvious that this injunction did not operate to take * * * away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon, the estate of the plaintiff. It is true that the language of the statute is comprehensive and embraces damages of any kind or degree to the estate, real or personal, to the person aggrieved, but the damage must be direct and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only. No part of the defendant's property was taken or carried away, no part of it was wasted or destroyed; the plaintiff's use of his property and not the property itself was affected by the act of which he complains. We are of opinion that such a right of action does not survive, and that it is barred by the limitation of one year.'

"This case is not distinguishable from the case at bar. Here, as in the case quoted from, the alleged misrepresentation as to rights of way did not operate to take away the goods of the plaintiffs or cause waste or destruction of, or inflict any damage upon, the estate of the plaintiffs. The damage is not direct, but if there was any injury, it was the consequential injury or loss to the estate which flowed from a wrongful act directly affecting the person only. The plaintiff's use of the property and not the property itself was affected by the act of which he complains. The conduct of Critcher in failing to procure the rights of way, if proven to have been wilful, only prevented Cover from using his property and exercising the right which he claimed to have, and did not directly injure the property itself, just as in the *Mumpower Case* the alleged malicious conduct of the city of Bristol simply prevented Mumpower

from using his property, and did not injure the property itself."

We are of opinion that the one year statute of limitations plead and sustained by the evidence in this case is a complete bar to the cause of action asserted herein, and if the Maytag Company had been properly before the court the said statute would have been a bar to the cause of action, if any the plaintiff in error had, against that company.

The judgment of the trial court is affirmed.

*Affirmed.*