J. FINLEY WILSON, Plaintiff, *v.* HUBERT H. BROWN et al., Defendants.

Supreme Court, Special Term, Kings County, February 7, 1947.

*Sidney Squire* for plaintiff.

*Oliver D. Williams* for Hubert H. Brown and Pleasant D. Early, defendants.

F. E. JOHNSON, J. The plaintiff sues individually to restrain alleged advertising by the defendants which he says is an inva-

sion of his rights under the Civil Rights Law. He is, and has been for some time, Grand Exalted Ruler of the Grand Lodge of I. B. P. O. E. of W., a fraternal organization; the defendants are officials or members of a local lodge of that organization. Apparently there is some controversy between them, or their lodge, and the Grand Exalted Ruler, or his office; it may be said, upon these papers, that they are not in good standing with the national organization. Whether there is ground for that alleged loss of status by them need not be decided here, but it might explain why, in his individual capacity, the Grand Exalted Ruler sues to restrain these defendants from what they are doing.

They have printed, and are either distributing or otherwise making public, what looks like the dance card of a ball and reception to be held this week by their local lodge; on the back thereof the printing is divided into three parts: at the top are three names with titles; below are the names of the local lodge committee representatives, who seem to have charge of this affair; below that is other information irrelevant to this motion. Of the three names at the top the first reads " J. Finley Wilson, * * * Grand Exalted Ruler ". It is this publication which he, in his individual and private capacity, seeks to restrain on the ground that it violates sections 50 and 51 of that Law.

The tenor of the decisions, and the language of the statute itself, warrant the inference that it was meant to protect *private* rights and to prevent invasion of the *individual* and *personal* right to privacy; there is nothing in the statute, or the decisions, concerning the personal and private right of one who holds a well-known official position to object when his name is mentioned *solely in connection with that position*. Even if a fair construction of this advertising were that the Grand Exalted Ruler approved of this social event it is questionable whether his grievance is *private* and *personal*.

If the printed matter referred to is susceptible of that inference, and is untrue the wrong is done to the national organization, and to the Grand Exalted Ruler in his official capacity; privately, individually and personally he has no complaint. If the reasoning upon which this action is brought and an injunction sought be sound it would be an invasion of the personal rights of the President of the United States to print his name and title on the program of an affair conducted by any Democratic club in this State, or for any American Legion Post in this State, on any notice of a coming event, to print the name and title of the National Commander, the State Commander or the

Department Commander, under penalty of being sued for damages for invading his *personal* privacy. It seems better to say that if the Legislature had intended any such rights to arise in such events the language used in this statute is not at all appropriate; if this statute did in fact give any such rights, no thoughtful legislator would have voted for it.

In fact, one who takes an office, whether it is in government or in outside organizations, must be deemed to have agreed to any reasonable public use of, or reference to, his name and title. At common law there does not seem to have been any protection that an individual could claim against a legal, nonlibelous, nonfraudulent mention of his name; our statute should be strictly construed. (*Kline* v. *McBride & Co., Inc.,* 170 Misc. 974; *Roberson* v. *Rochester Folding Box Co.,* 171 N. Y. 538.) In *Humiston* v. *Universal Film Manufacturing Co.* (189 App. Div. 467) it was construed as meaning that those who have taken a public status have waived some, if not all, of their rights to forbid public mention; the plaintiff there, a member of the Bar, was engaged in legal work connected with the solution of the disappearance of a woman, which was front-page news for a long time in this city; while engaged in that work, and properly in an automobile with a police captain, she was photographed by a news agency which was in the business of putting current events on the screen; her picture was shown on the screen, and her name appeared on a poster in front of a theatre telling about the picture; her complaint was dismissed.

It is, however, not a fair inference, from this printed matter, that the Grand Exalted Ruler is supporting the event, or even approves of it; the local lodge, and these defendants, evidently maintain that they *are* in good standing, and proclaim their status as a lodge belonging to the national organization; it is as such as they are holding this social event; they recognize the Grand Exalted Ruler to be such, and evidently intend to show their recognition of him and their subordination to him, by placing his name and his title in a position indicative of that subordination and loyalty.

Persons who accept high positions ought not to be so tender about the mention of their names; they must bear " the white light that beats upon a throne." If they want peace and privacy they should stay out of public life; if they object to having their names legitimately mentioned they need only resign and they will quickly subside into happy obscurity; it is impossible to take the headship of a nation-wide organization and personally

retire from the world. When there is no offensive implication but only such as a loyal gesture would dictate, it requires a strained and twisted interpretation of this law to disassociate the Grand Exalted Ruler from the human being who holds the office and to say that his *private, personal* and *individual* rights have been damaged and that he is entitled to an injunction and even money damages, for having been so much as mentioned under these circumstances. Such an interpretation would bring this good statute into disrepute. It is a law serving a need but ought not be enlarged *by any court* to satisfy a factional hostility under the guise of protecting rights that do not exist. Denied.