**William H. HOLDFORD, etc., Plaintiff,**

v.

**Garrett D. LEONARD, Defendant.**

**Civ. A. No. 71-C-55-H.**

United States District Court,
W. D. Virginia,
Harrisonburg Division.

Feb. 6, 1973.

**262**

R. W. Smith, Timberlake, Smith, Thomas & Moses, Staunton, Va., and Henry C. Babb, Wilson, N. C., for plaintiff.

W. W. Wharton, Phillip C. Stone, Wharton, Aldhizer & Weaver, Harrisonburg, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

The plaintiff, a citizen of North Carolina, has brought this action against the defendant, a citizen of Virginia, to recover money which the plaintiff claims was wrongfully and illegally taken from the Leonard Tire Company by the defendant while he was president of this company. The tire company is presently in bankruptcy proceedings in the United States District Court for the Eastern District of North Carolina. The plaintiff has been appointed trustee of the tire company.

The complaint alleges that during a period beginning on or about January 1, 1967 and continuing through part of 1968 the defendant by various fraudulent and devious methods defrauded the tire company to the extent of $23,773.92, which money the defendant used for his own personal benefit.

The suit was originally filed in the name of the plaintiff and Harleysville Mutual Insurance Company, which had insured the Leonard Tire Company against any dishonest or fraudulent acts of its agents. Because of the loss occasioned by the defendant's acts, the insurance company paid $10,000 to the tire company. After this suit was commenced, the insurance company was dropped from it by agreement of the parties, and the case was ordered to proceed in the name of the trustee only. The court has, however, impressed a trust upon any amount recovered in this suit for the benefit of the insurance company.

The defendant has moved to dismiss this case, contending that it is barred by the Virginia statute of limitations, § 8–24 of the Virginia Code. This section reads as follows:

". . . Every personal action, for which no limitation is otherwise prescribed, shall be brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued . . .".

The defendant contends that the present action is one for fraud and deceit, which in Virginia does not survive the death of either party. Therefore the defendant contends the applicable time period is

one year. This period having expired, the suit is now barred.

Before determining the statute of limitations question, this court must first decide whether or not the proper law to be applied is that of Virginia or North Carolina. Under the *Erie* doctrine federal courts are bound to apply the substantive law of the states in which they sit. The purpose of this rule is to prevent different results of the same or similar cases in the state and federal court. The Supreme Court has held that conflict of laws rules are part of the state's substantive law, and as such federal district courts must apply the conflict of laws rules used in the jurisdiction in which they sit. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U. S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). This court must therefore look to the Virginia conflict of laws rules to determine whether Virginia or North Carolina law is applicable in this case.

In Virginia questions concerning statutes of limitations are deemed to be procedural and as such are controlled by the law of the forum state, in this case Virginia. 4 Michie's Jurisprudence, Conflict of Laws § 39 (1949). The general rule is that where the right of action existed at Common Law, then the laws of the forum state within which the right may be enforced will apply; but where the right of action did not exist at Common Law, and the statute which creates the right also limits the time within which it may be enforced, then this latter time becomes the critical time period within which the action must be brought. *See* Norman v. Baldwin, 152 Va. 800, 148 S.E. 831 (1929).

Having determined that this court must apply the Virginia statute of limitations, the final question is whether the proper time period is one year or five years. If the former, the suit is barred; but if the latter, then the suit was timely filed. As stated in the statute, whether or not one applies the one year or five year time period de-

pends upon survival. If the action is one which would survive the death of either party, the proper time period is five years; if it would not survive, the one year restriction applies. Progressive Realty Corp. v. Meador, 197 Va. 807, 91 S.E.2d 645 (1956).

In Virginia survival depends upon whether or not the action is an injury to property or to the person. If the wrong is against property, real or personal, then the action will survive if it is a direct injury to property and not an indirect or consequential injury to property which results from a direct injury to the person. Injuries which are personal in nature must be brought within one year of the accrual of the cause of action. Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 128 F.2d 645 (4th Cir. 1942); Travelers Ins. Co. v. Turner, 211 Va. 552, 178 S.E.2d 503 (1971); Richmond Redevelopment & Housing Authority v. Labarnum Constr. Co., 195 Va. 827, 80 S.E.2d 574 (1954); Vance v. Maytag Sales Corp., 159 Va. 373, 165 S. E. 393 (1932); Winston v. Gordon, 115 Va. 898, 80 S.E. 756 (1914); Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581 (1897).

In Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581 (1897) the plaintiff sued the city for maliciously issuing an injunction against him which deprived him of water needed to run his mill. The Virginia Supreme Court held that the damage to his business caused by the injunction was indirect; the direct injury was his inability to use the water. The practical effect of the injunction was the same as if it had been issued against the mill itself ordering it to cease operation. The Virginia court was and continues to be very technical in its interpretation of this statute, and it appears to extol form over substance. Therefore because the injunction was not directly against the plaintiff's business, which is his property, the effect which it did have on his business was indirect. Not having been brought within one year, the suit was barred.

The court in *Mumpower* stated the following:

It is quite obvious that this injunction did not operate to take or carry away the goods of the plaintiff, nor cause the waste or destruction of, or inflict any damage upon the estate of the plaintiff. It is true that the language of the statute is comprehensive, and embraces damage of any kind or degree to the estate, real or personal, of the person aggrieved; but the damage must be direct, and not the consequential injury or loss to the estate which flows from a wrongful act directly affecting the person only. No part of the defendant's property was taken or carried away; no part of it was wasted or destroyed; the plaintiff's use of his property, and not the property itself, was affected by the act of which he complains.

Mumpower v. City of Bristol, 94 Va. 737, 27 S.E. 581 (1897).

According to this test, the tort, to be direct, must be directed at an individual's property itself and must involve some asportation of or destruction or waste to the property. The Virginia court is extremely technical in this area and to receive the benefit of the five year statutory period, the tort not only must be against and affect directly the plaintiff's property itself, but the plaintiff must sue only for the direct injury.

As previously stated, while the injunction did have the effect of curtailing the plaintiff's business, he was not directly prohibited from pursuing it. If other methods of power had been available the plaintiff could have continued in business. In addition under the test in *Mumpower* none of his property was carried away or destroyed, nor was there any legal waste to the property, although there was undoubtedly economic waste. The plaintiff was only deprived of a chance to make profits; those profits already in his possession were not affected. Thus no tangible property was taken away from him or destroyed (despite the fact that his chance to earn fu-

ture profits was destroyed.) Because he sued to recover the lost profits, which were the indirect result of the injunction, the one year period applied. Had the suit been brought within one year, these indirect damages could have been recovered. Likewise had the plaintiff sued for the direct damages, whatever they might have been, then he would have remained in court.

The defendant argues that even where there has been a direct injury to property the court has applied the one year statute. Richmond Redevelopment & Housing Authority v. Labarnum Constr. Corp., 195 Va. 827, 80 S.E.2d 574 (1954). The defendant, however, has misread the case, for the court explicitly held that the damage to the house was an indirect injury to the plaintiff's property.

In this case a house owned by the plaintiff and built by the defendant was severely damaged by an explosion from a faulty gas pipe. The court held that the damage to the house was indirect, the direct damage being the installation of the faulty pipe.

While at first glance this case would seem to be in direct conflict with the statute, using the test expressed in *Mumpower*, the case does not seem to be irreconcilable. The plaintiff in the case alleged two counts in his complaint: 1) a breach of an express warranty made after the work was completed which fraudulently induced payment, and 2) fraud and deceit committed after the work was completed. The court was extremely technical in this case in describing the chain of events, and the impression one receives from reading this case is that the Virginia Supreme Court in § 8–24 cases is looking for the very first instance of harm, no matter how small or minute. It appears that the demarcation line between a direct and an indirect injury is drawn immediately after any initial harm. The obscurity or minuteness of such harm is of no consequence, and everything occurring after it is an indirect injury. Therefore the

court stated with respect to the warranty count that the direct injury, (i. e. that injury which was the very first in the total chain of events) was the installation of the faulty joint. Everything which occurred after this point was by the Virginia court's interpretation an indirect injury caused by the direct wrong.

With respect to the plaintiff's fraud count, the initial and very first injury was the parting with the money. When an individual complains about fraud, he is alleging that someone has induced him to part with something of value by means of deceit and trickery. Fraud in the technical sense does not occur until the individual has parted with his item of value, and until this point is reached the individual has not been damaged or hurt. Immediately upon the transfer, however, the initial injury occurs, and it is at this point that the Virginia court will draw the line. The parting with the item of value by trickery is the direct injury, while everything which occurs thereafter is an indirect injury.

The test set forth in *Mumpower* requires that there be some asportation of or damage or waste to property. In a fraud situation, the taking and carrying off of the individual's property fulfills the asportation criterion. The installation of the faulty joint fulfills the damage requirement. Had the plaintiff sued to recover his entire payment, which was the initial and therefore the direct injury, instead of for the indirect injury, the damage done to the house, then according to the Virginia court's language it appears that the plaintiff would have prevailed because the five year period in § 8–24 would have applied. Because he alleged fraud, but sued for the indirect injury, he was bound by the one year limitation period.

It is important to note that the fraudulent representations made by the defendant in the *Richmond* case concerned the fitness of the entire building. Therefore, a defect in any part of the building, no matter how small, resulted in a total misrepresentation of the whole building. In Westover Court Corp. v. Eley, 185 Va. 718, 40 S.E.2d 177 (1946), however, the fraudulent representation was not with respect to the whole house, but was only with respect to a part of it, the heating plant. In this case as in the *Richmond* case, the direct injury occurred when the plaintiff parted with his money, yet the defendant was only required to pay the difference in the value of the house as it was. Thus in fraud cases while the direct injury always occurs when the individual parts with his money, the measure of damages is limited by the extent of the misrepresentation or fraud. See also Cover v. Critcher, 143 Va. 357, 130 S.E. 238 (1925).

Likewise in Vance v. Maytag Sales Corp., 159 Va. 373, 165 S.E. 393 (1932), which the defendant asserts stands for the proposition that all fraud and deceit actions do not survive, the Virginia court has not departed from its original position in *Mumpower*. As in *Mumpower*, the plaintiff in *Vance*, was complaining about something he had not received, future profits in *Mumpower* and additional sales territory in *Vance*. While the defendant in *Vance* might have induced the plaintiff to sell its machines by fraudulently offering additional territory, there was no asportation of or damage to property already owned by the plaintiff. The additional territory was not taken from him because it was never in his possession. Because there was no asportation of or damage to any property owned by the plaintiff, there was no direct injury to his property and he was required to assert his claim within one year.

In Winston v. Gordon, 115 Va. 899, 80 S.E. 756 (1914) the shareholders of a bankrupt corporation sued the directors of the corporation and charged that they carelessly and negligently disregarded their duties as directors. The Virginia court held that the director's acts constituted a direct injury to property. While the court was not as clear in its reasoning in this case, applying the test set

forth in *Mumpower* one finds that the requisite elements were present. The suit was by the shareholders to recover the assets of their corporation. Their property was the corporation. The directors were responsible for this property, and when they made loans to insolvent corporations, firms, and individuals and allowed people to overdraw their accounts, the requisite asportation of the property occurred. The directors in a sense allowed the property of the shareholders, the corporation and its assets, to be carried away. In addition this case presents the element of legal wasting of property. The acts done were directly against the shareholders' property, the corporation, and the shareholders were suing to recover the money squandered by the directors, which was the direct damage, and not to recover any indirect damage such as lost profit or forcing the corporation into bankruptcy.

A final case is Barnes Coal Corp. v. Retail Coal Merchants Ass'n, 128 F.2d 645 (4th Cir. 1942). This suit was brought by the plaintiff to recover damages under the Sherman Antitrust Act. The court stated:

> It seems perfectly clear that if an action for damages against directors of a bank for loss resulting from their negligence survives under the law of Virginia, an action for damages for loss occasioned to one's business from conspiracy in violation of the antitrust act must needs survive on the same principle. Barnes Coal Corp. v. Retail Coal Merchants Ass'n., 128 F. 2d 645, 651 (4th Cir. 1942).

The court in *Barnes* stated that neither this case nor *Winston* involved in any technical sense the taking or carrying away of goods or the wasting or damaging of an estate. While this court would disagree with this statement with repect to the *Winston* case, it would agree that these elements are not present in the *Barnes* case. Because the Fourth Circuit had no specific case on point to guide it, it reached this decision on the theory that the *Winston* case held that a direct injury to property will occur where the acts complained of affect primarily and principally property and property rights. The present case on its facts is not similar to or analogous to the *Barnes* case.

Thus in § 8–24 cases to involve the five year statutory period, it is clear that the Virginia court requires that property or property right be affected, that the property or property right be in some way carried off, wasted or damaged, that the plaintiff sued only for the direct damages done to the property, and that the damage, to be direct, must be the very first or initial damage done to the property when viewed in the very precise, technical, and narrow method which the Virginia Supreme Court employs.

In the present case the plaintiff is seeking to recover money fraudulently and wrongfully taken from the Leonard Tire Company. The injury is to property owned and possessed by the corporation, unlike the circumstances in *Mumpower* and *Vance*, and the defendant carried this property, the money, off. Therefore the injury was to property and the requisite element of asportation is present. Having determined this, the court must now decide when the injury occurred to determine the demarcation point dividing direct and indirect injury, and whether the plaintiff is properly suing for the direct injury.

As in other fraud cases, the direct injury occurs when the money or property is taken. Richmond Redevelopment & Housing Authority v. Labarnum Constr. Corp., 195 Va. 827, 80 S.E.2d 574 (1954); Westover Court Corp. v. Eley, 185 Va. 718, 40 S.E.2d 177 (1946); Cover v. Critcher, 143 Va. 357, 130 S.E. 238 (1925). Unlike the *Richmond* case, the plaintiff is not suing to recover damages done to the business which occurred as a result of the theft, but rather he is suing to recover the direct injury, the money.

As stated by the Virginia court in the *Richmond* case, the direct injury was the handing over of the money. Therefore

had the plaintiff sued to recover the money instead of the damage done to the house, the Virginia court apparently would have applied the five year statute of limitations. Because the direct injury in the present case was the taking of the money, and because the plaintiff is suing to recover the money, the plaintiff is properly suing for the direct injury, and this court therefore holds that the proper statutory period in this case is five years.

The defendant's motion to dismiss is hereby denied.