Billy K. EVANS, Plaintiff,

v.

Richard F. STURGILL, Defendant.

Civ. A. No. 75–0061.

United States District Court,
W. D. Virginia.

April 27, 1977.

Joseph P. Johnson, Jr., Abingdon, Va., James F. Clay, Jr., Danville, Ky., for plaintiff.

T. L. Hutton, Sr., Ann P. Hutton, Abingdon, Va., George M. Warren, Jr., Bristol, Va., for defendant.

## OPINION

WILLIAMS, District Judge.

Billy K. Evans brought this action against the defendant, Richard F. Sturgill, for damages allegedly suffered when plaintiff Evans was arrested on December 8, 1973 in Ann Arbor, Michigan and detained in a local jail for about three days. After depositions were taken in the case, the defendant moved for summary judgment on several grounds and the motion was taken under advisement by this court. For the reasons stated in the remainder of this opinion, it is held that the motion for summary judgment is proper and should be granted in defendant's favor.

The following language of Rule 56(c) of the Federal Rules of Civil Procedure sets forth the scope of the record to be considered by the court in ruling on the motion for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Fed.R.Civ.P.* 56(c). The record in this case consists of the initial pleadings, depositions of both parties, the motion for summary judgment filed by the defendant, and several memoranda of authorities and argument submitted by the defendant. Plaintiff had opportunities to respond and did participate in oral argument on the motion. It is well settled that in ruling on a motion for summary judgment, the court should consider, in addition to the pleadings, all papers of record such as affidavits, answers to interrogatories, admissions and stipulations, documentary and other evidentiary materials, and facts subject to judicial notice, as well as any materials prepared in support of the motion. *Northwestern Nat'l Ins. Co. v. Corley,* 503 F.2d 224 (7th Cir. 1974); *Becker v. Safelite Glass Corp.,* 244 F.Supp. 625 (D.Kan.1965). Also, this court must view all facts and inferences drawn therefrom in the light most favorable to the plaintiff, the party opposing the motion. *Searer v. West Michigan Telecasters, Inc.,* 381 F.Supp. 634 (W.D.Mich.1974); *Phillips v. Columbia Gas of W. Va.,* 347 F.Supp. 533 (S.D.W.Va.1972), aff'd 474 F.2d 1342 (4th Cir. 1973).

It appears that the following chain of events resulted in the instant litigation. The defendant had known the plaintiff for a number of years and knew that he sometimes served as a "broker" of airplanes. Defendant desired to sell his own plane and this fact was somehow communicated to the plaintiff, who called defendant and offered to sell the plane for him. The two men met at the Lonesome Pine Airport in Wise, Virginia and flew in defendant's plane from there to the Huff airport at Chilhowie, Virginia, where defendant's car was located. Defendant gave plaintiff the keys to the plane and a packet of materials, including the aircraft papers, registration certificate, bill of sale and other papers. At this point, the factual impressions of the parties diverge. The defendant claims that the two men had an understanding that the plaintiff had a buyer for the plane and would either send defendant a check for the sale or call him in the next few days. Plaintiff claims that there was no specific understanding as to their next communication and that plaintiff was only obligated to report back when the airplane was sold.

After the materials and keys were given to plaintiff, he flew the plane back to Wise

for refueling. From there, he flew to Pikeville and demonstrated the plane to several friends, including Ertel Whitt. He then flew to Michigan because another friend of his, Dr. Beatrice Brott, who lived in Michigan, had indicated an interest in the plane. He remained in Michigan for several weeks and supposedly did reach an agreement with Dr. Brott for the purchase of the plane (although that sale was never consummated.)

In the meantime, the defendant had left the country for an eight-day European trip, leaving within two days of the day he had turned control of the plane over to plaintiff. Upon his return to this country, he made several efforts to locate the plaintiff and the plane but was unsuccessful. Finally, on the advice of the local office of the Federal Aviation Administration and the F.B.I., he went to the Commonwealth's Attorney of Washington County. On that day, December 5, 1973, a warrant was issued by the Clerk of the Court for the arrest of the plaintiff for felonious theft of the airplane. Probable cause for the issuance of the warrant was based on the sworn statements of the defendant.

The issuance of the warrant came about five weeks after the airplane was placed in the plaintiff's possession. On December 8, 1973, plaintiff was arrested at the airport at Ann Arbor, Michigan and he was detained in a local jail about three days. The plane was still in his possession at that time and was confiscated by local authorities, who released it to the defendant on December 11. On March 8, 1974, the warrant was terminated in the General District Court of Washington County, Virginia by entry of *nolle prosequi.* The complaint in this action was filed by plaintiff on February 6, 1975, more than one year from the date, December 5, 1973, when the defendant gave the sworn statements which resulted in the issuance of the warrant for plaintiff's arrest.

The complaint filed by the plaintiff consisted of five counts, which can be summarized as follows:

"Count A" (malicious prosecution count) alleges that the warrant and criminal proceedings were "instituted and continued by the defendant maliciously and without probable cause."

"Count B" (abuse of process count) alleges that the processes of law were abused by defendant to extort an advantage from plaintiff.

"Count C" (common law libel and slander count) alleges that the statements made to the authorities and set forth in the court documents "were false; known by the defendant to be such; made with the intent to injure the plaintiff; calculated to, and they did, expose him to ridicule."

"Count D" alleges that the defendant's conduct injured plaintiff "in his business and personal life by invading his privacy."

"Count E" alleges that the statements of the defendant "made in the course of procuring the warrant and the proceedings thereon" are actionable under the "insulting words" statute, *Va.Code* § 8-630.

The complaint clearly bases the several counts on the actions of the defendant in "instituting and continuing" the criminal proceedings and the statements made pursuant to these proceedings. However, when the plaintiff was deposed on this matter, he was unable to expand on his general allegations with any specific statements made by the defendant *after* the issuance of the warrant. While he stated that the defendant made false statements other than the statements made in support of the warrant, he gave no specific details as to when these statements were made or to whom they were made. *See* Deposition of Billy K. Evans, 55-63. He agreed to furnish the defendant a list of all persons to whom these false statements were made and on what dates they were made. *Id.,* 59. However, no "list" or other factual summary was forthcoming and no further facts appear in the record. Likewise, when faced with the defendant's motion for summary judgment, the plaintiff has not come forward with an appropriate response in specific support of the general allegations of his complaint. Thus, it must be assumed for purposes of the summary judgment mo-

tion that no statements were made by defendant after December 5, 1973 upon which plaintiff could have based his response.

The complaint also speaks in terms of the defendant's actions in "continuing" the criminal proceedings. Under the law of Virginia, an arrest warrant is issued by a state officer (authorized under *Va.Code* § 19.2–71 [1975 Repl. Vol.]), based upon sworn statements of a complainant and other witnesses. *Va.Code* § 19.2–72 (1975 Repl. Vol.) In this case, defendant Sturgill related the facts to the Commonwealth's Attorney, Mr. Brown, who decided that probable cause existed for the issuance of the arrest warrant. At that point, control over "continuation" of the proceedings was transferred to the State and the defendant Sturgill had no power to alter or terminate the proceedings.

The summary judgment motion filed by the defendant is based on the following grounds:

(1) all five counts are barred by the statute of limitations under *Va.Code* § 8–24;

(2) no common law cause of action for invasion of privacy exists in Virginia, and the invasion of privacy allegation in this action does not satisfy *Va.Code* § 8–650; and

(3) any statements made to the Commonwealth's Attorney or in subsequent proceedings are absolutely privileged as a matter of law.

Invasion of Privacy Count

In Count D of his complaint, plaintiff alleges that the defendant's conduct in procuring the warrant and continuing the proceedings was

. . . calculated to, and did, place the plaintiff in a false light in the public eye, portraying him as a thief and a fugitive from justice, and injuring him in his business and personal life by invading his privacy.

The defendant has responded with the contention that no cause of action for invasion of privacy exists in Virginia except within the narrow confines of *Va.Code* § 8–650,

and that this statute does not apply to the instant set of facts.

The right of privacy (and the concomitant right of action for invasion of privacy) was first articulated in a classic article in the *Harvard Law Review* in 1890. Brandeis & Warren, "The Right to Privacy", 4 *Harv.L. Rev.* 193 (1890). Since that time, the great preponderance of authority supports the view that independently of the common rights of property, contract, reputation, and physical integrity, there is a legal right called the right of privacy, the invasion of which is a tort and gives rise to a cause of action. 62 *Am.Jur.*2d "Privacy" § 3 (1972); *see also* Annot., "Right of Privacy—Legal Action", 42 *A.L.R.*3d 865 (1972); Annot., "Right of Privacy" 14 *A.L.R.*2d 750 (1950).

However, the courts of several states have denied the existence of any legal right of privacy, the invasion of which would give rise to a cause of action. The defendant's memorandum has cited as analogy the situation in New York, where that state's highest court in 1902 held that the right of privacy did not exist. *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538, 64 N.E. 442 (1902). In response to that decision, the legislature of the state of New York enacted a statute which made the unauthorized use of a person's name or picture a misdemeanor. *New York Civil Rights Law* § 50. From that time on, the courts of New York have consistently held that no general right of privacy exists in the law of New York, except for the right conferred by statute. *See In Re Hart's Estate*, 193 Misc. 884, 83 N.Y.S.2d 635 (1948); *Wilson v. Brown,* 189 Misc. 79, 73 N.Y.S.2d 587 (1947).

Several states, including Virginia, have passed statutes which are substantially similar to the New York statute. *See Chaplin v. National Broadcasting Co.,* 15 F.R.D. 134, 138 (S.D.N.Y.1953). The Virginia statute states that the use, for commercial purposes, of the name, portrait, or picture of any person without his or her consent is a misdemeanor. *Va.Code* § 8–650 (1957 Repl. Vol.) The statute further provides for injunctive relief and damages against the party misusing the name, portrait, or pic-

ture. No Virginia case has been located which has construed this statute. Also, no Virginia case has been located which found a right of privacy existing outside of the statute. However, a federal district court has considered the Virginia statute and has given it the same strict construction which the New York courts have given the very similar New York statute. *Bernstein v. National Broadcasting Company,* 129 F.Supp. 817, 829 (Dist.Col., 1955); *aff'd* 98 U.S.App.D.C. 112, 232 F.2d 369 (1956); *cert. denied* 352 U.S. 945, 77 S.Ct. 267, 1 L.Ed.2d 239 (1956). In that case, the plaintiff had sued NBC for presenting a television program in 1952 which was a fictionalized dramatization of the plaintiff's conviction for bank robbery in 1919 and his subsequent pardon. The district court analyzed the law of Virginia and the law of the District of Columbia and concluded that no right of privacy existed in Virginia outside of the statute, *Va.Code* § 8–650. The court went on to find that the television program did not fall within the narrow language or purpose of the Code section.

The right of privacy has been discussed in a comparable manner by Professor Prosser:

> In one form of [sic] another, the right of privacy is by this time recognized and accepted in all but a very few jurisdictions. It is recognized in a limited form by the New York statute, and by similar acts adopted in Oklahoma, Utah and Virginia.

W. Prosser, *The Law of Torts* § 117 at 802 (4th ed. 1971). Prosser clearly places Virginia in the category with New York, evidently concurring in the judicial conclusion that the legislative adoption of a particular form of the right to privacy signaled an intent to limit the scope of that right to the specific language of the statute.

 In the absence of guidance from the Supreme Court of Virginia, this court must rely on the conclusions of other federal courts, state courts, and commentators, as it attempts to interpret the intent of the legislature of Virginia in adopting section 8–650. Therefore, it is the conclusion of this court that no general right of privacy exists in the law of Virginia, except for the limited right conferred by *Va.Code* § 8–650. Further, the acts complained of do not fall within the rather narrow purview of that statute. Accordingly, Count D of this action alleging an invasion of privacy must be dismissed.

### Statute of Limitations Plea

Earlier in this opinion, an assumption was made that no statements were made by the defendant after December 5, 1973, upon which plaintiff could have predicated his action. To elaborate further, this assumption was based on the failure of plaintiff to furnish any specific instances after December 5, 1973 in which the defendant had made statements which harmed him. Plaintiff failed to provide these instances in response to the motion for summary judgment and also failed to provide them when specifically deposed on the issue. In other words, if statements concerning the plaintiff were made by defendant after December 5, 1973, and if plaintiff were aware of these statements and any damages associated with them, he would have come forward with these specific instances in accordance with his assertion in the deposition or to rebut the implications of defendant's plea to the statute of limitations. In effect, defendant's motion for summary judgment and the memorandum in support thereof both imply that he made no statements (concerning the alleged theft of the airplane) after February 5, 1974 so as to toll the running of the statute of limitations. Upon plaintiff's failure to respond, it must be assumed that he cannot furnish specific instances to rebut the general denial implicit in the defendant's motion.

Defendant's motion stated that the one-year statute of limitations in *Va.Code* § 8–24 applied to all five counts and that such period had elapsed between February 6, 1974 and the date of filing, February 6, 1975, thereby barring maintenance of the suit. The cited section provides in relevant part:

> Every personal action, for which no limitation is otherwise prescribed, shall be

brought within five years next after the right to bring the same shall have accrued, if it be for a matter of such nature that in case a party die it can be brought by or against his representative; and if it be for a matter not of such nature, shall be brought within one year next after the right to bring the same shall have accrued.

*Va.Code* § 8–24 (1957 Repl.Vol.). Therefore, resolution of the question of which limitation period applies depends on whether or not the cause of action survives the injured party.

█ The four counts remaining before the court can be summarized generally as follows: malicious prosecution, abuse of process, common law libel and slander, and insulting words. The invasion of privacy count, although dismissed earlier in this opinion, will also be considered under the plea to the statute of limitations. As stated earlier, the actions of the defendant in "continuing" the criminal proceedings will not be considered by this court since the action was technically undertaken by the state, although based on defendant's sworn statements, and was therefore "continued" by the state until ended at the discretion of the Commonwealth's Attorney. Hence, the last alleged act by the defendant (which can be discerned from the record) in all five of the asserted causes of action was his sworn statement to the Commonwealth's Attorney on December 5, 1973. Therefore, the question to be disposed of at this point is which period of limitation in section 8–24 applies to the five counts in this case.

This court has had occasion to consider section 8–24 before. In *Holdford v. Leonard,* 355 F.Supp. 261 (W.D.Va.1973), Judge Dalton made a thorough analysis of the Virginia cases which construed section 8–24 and which distinguished between actions which survive and those which do not. In light of the fact that Judge Dalton's opinion so completely sets forth the Virginia law on this point, it is not necessary to repeat the analysis here. The court in that case stated:

In Virginia survival depends upon whether or not the action is an injury to property or to the person. If the wrong is against property, real or personal, then the action will survive if it is a direct injury to property and not an indirect or consequential injury to property which results from a direct injury to the person. Injuries which are personal in nature must be brought within one year of the accrual of the cause of action. [citations omitted.]

355 F.Supp. at 263. This rule appears simple, but the Supreme Court of Virginia has been very strict in its application of the rule. Judge Dalton went on to state:

[t]o receive the benefit of the five year statutory period, the tort not only must be against and affect directly the plaintiff's property itself, but the plaintiff must sue only for the direct injury. . .

. . . . .

It appears that the demarcation line between a direct and an indirect injury is drawn immediately after any initial harm. The obscurity or minuteness of such harm is of no consequence, and everything occurring after it is an indirect injury.

355 F.Supp. at 264. Therefore in determining what period of limitations to apply under section 8–24, it is necessary to look not only at whether the tort is against the person or against the property of that person, but also whether the injury for which the person is suing was the direct or indirect result of the tort. Also, the "directness" of the injury must be judged under the extremely technical rule discerned by this court in *Holdford, supra.*

█ The complaint in this case sets forth the plaintiff's injuries:

As a result of the procurance of the warrant and proceedings thereon, and the conduct of the defendant as set forth above, the plaintiff has been deprived of his liberty, he has endured and will hereafter endure excruciating mental anguish, he has lost time from the transaction of his business, he has incurred ex-

penses for defense of the false charges brought against him and attendance in proceedings thereon, and his reputation has been injured, all to his damage in the sum of $250,000.00.

These categories of injury can be summarized as follows: (1) deprivation of liberty, (2) mental anguish, (3) loss of earnings, (4) legal expenses, and (5) damage to reputation. Of these five items of injury, three are clearly personal injuries: deprivation of liberty, mental anguish, and reputation damage. The other two items are clearly indirect injuries to property. The loss of business earnings due to "lost time" is not the destruction or asportation of property. It is in effect economic waste—the denial of future profits—and, under the technical rule espoused by the Virginia court, it is an indirect result of the deprivation of liberty. The final category of injury, legal expenses, is also an indirect or consequential injury, resulting from the need to prevent further deprivation of liberty and to minimize further reputation damage. In conclusion, the five counts in this complaint all allege actions of the defendant against the "person" of the plaintiff rather than against his property. Also, the complaint alleges only *direct* personal damage and *indirect* property damage. Under the interpretation of section 8–24 by the Supreme Court of Virginia, as discerned by this court in *Holdford, supra,* the one-year statute of limitations must be applied to all five counts of the complaint.

The complaint in this case was filed on February 6, 1975. Application of the one-year statute of limitations to all five counts in this action leads to the conclusion that the limitations period had expired prior to the filing of the complaint. Therefore, all five causes of action are barred by section 8–24. Accordingly, the motion for summary judgment as to the five counts in the complaint is meritorious and should be granted.

### Conclusion

This suit was commenced on the basis of five counts, growing out of an incident caused by an alleged theft of an airplane. The invasion of privacy count does not fall within the right of action created by *Va. Code* § 8–650. Since there is no general right of action for invasion of privacy apart from the statutory right, this count must therefore be dismissed. All five counts are barred by the one-year statute of limitations in *Va.Code* § 8–24, justifying the dismissal of the four remaining counts and furnishing an alternative ground for the dismissal of the invasion of privacy count. The dismissal of all five counts renders the complaint nugatory. A separate order will be entered in accordance with this opinion, dismissing the complaint and striking the case from the docket.