Sam C. C. KIMBREL, Appellee,

v.

NEIMAN–MARCUS, Appellant.

No. 79–1481.

United States Court of Appeals,
Fourth Circuit.

Argued May 6, 1981.

Decided Oct. 16, 1981.

Gordon D. Schreck, Charleston, S. C. (Buist, Moore, Smythe & McGee, Charleston, S. C., on brief), for appellant.

W. Brantley Harvey, Jr., Beaufort, S. C. (Harvey, Battey & Bethea, P. A.), Beaufort, S. C., on brief), for appellee.

Before SPROUSE and ERVIN, Circuit Judges, and RAMSEY,* District Judge.

RAMSEY, District Judge.

Appellee Sam C. C. Kimbrel sued Neiman-Marcus in the district court for breach of contract. Jurisdiction was claimed under diversity of citizenship. 28 U.S.C. § 1332. Kimbrel is a citizen of South Carolina and Neiman-Marcus is a corporation incorporated and having its principal place of business in Dallas, Texas. Neiman-Marcus moved to dismiss the complaint for lack of jurisdiction over the person or, in the alternative, to quash the service of process.

The lower court denied the motion to dismiss, finding that the South Carolina long-arm statute conferred jurisdiction. In the Order denying the motion, the court noted that although Neiman-Marcus' business contacts with South Carolina were "very small relative to its overall business," they were sufficient to satisfy the "minimum contacts" required by due process. The district court allowed Neiman-Marcus an immediate appeal from its Order, pursuant to 28 U.S.C. § 1292(b). Neiman-Marcus' Petition for Leave to Appeal was in due course granted by Order of this Court.

The South Carolina long-arm statute, South Carolina Code Ann. § 36–2–803 (1976), provides in pertinent part:

---

* Honorable Norman P. Ramsey, United States District Judge for the District of Maryland, sitting by designation.

(1) a Court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's

    (a) transacting any business in this State;

    \*    \*    \*    \*    \*    \*

    (g) entry into a contract to be performed in whole or part by either party in this state.

■ The determination of whether personal jurisdiction may be exercised over an out of state defendant under a long arm statute involves a two-step inquiry. First, the Court must determine whether the terms of the statute itself confer personal jurisdiction. This determination requires application of the pertinent state law. The Court must then examine federal law and determine whether the exercise of jurisdiction in the particular case would violate due process. *Hardy v. Pioneer Parachute Co., Inc.*, 531 F.2d 193 (4th Cir. 1976).

■ The district judge correctly found that the South Carolina long-arm statute seeks to assert jurisdiction and on its face allowed the exercise of personal jurisdiction over Neiman-Marcus. South Carolina has the stated policy of extending by long-arm the jurisdiction of its courts to the farthest perimeter allowed by due process. *O'Neal v. Hicks Brokerage Co.*, 537 F.2d 1266, 1267 (4th Cir. 1976).

In his complaint, Kimbrel alleges that Neiman-Marcus agreed to purchase from him "gold-framed miniature masterpieces" by Joseph Bowler for $24,000 each and that such miniatures were to be featured in Neiman-Marcus' 1977 Christmas catalog. A "Memorandum of Understanding" signed by Kimbrel and Ron Foppen, director of Neiman-Marcus' Mail Order Division, provides:

> Sam C. C. Kimbrel will commission Joseph Bowler to paint a miniature portrait of customer's choice (not more than two people). *Customer (two people) will visit Hilton Head Island for a period of three days to pose for Mr. Bowler....* (emphasis added).

The terms of this "Memorandum of Understanding" make it clear that the parties contemplated part of the performance required under the contract would take place in South Carolina.

Neiman-Marcus argues that it is a "passive-buyer" and that the performance of part of the contract in South Carolina is a requirement imposed unilaterally by Kimbrel, so that it is not embraced within Section 36–2–803(1)(g). We are unable to accept Neiman-Marcus' characterization. Correspondence between Kimbrel and Foppen in the record indicates that Neiman-Marcus was not "passive" in entering and establishing the agreement. For example, after Kimbrel had requested a meeting in South Carolina, Foppen invited Kimbrel to come to Dallas to discuss his proposal. That meeting was held in mid-June, 1976. A letter from Kimbrel to Foppen dated July 2, 1976, sets out what Kimbrel perceived as the terms agreed to at that meeting.

The Court is unable to say that the choice of South Carolina as the location for sittings for the miniatures was "unilaterally" imposed by Kimbrel. The "Memorandum of Understanding" is signed by Foppen as well as Kimbrel. Furthermore, there are indications that the inclusion of the Hilton Head visit was also of interest to Neiman-Marcus as an integral part of the claimed novelty of the project. A letter from Robert W. Selton, of Hilton Head Island, written to Foppen at Kimbrel's request, states in a postscript:

> Apart from [the Kimbrel proposal] or possibly related to the Bowler portrait accommodations our Island people are interested in pursuing the catelog [sic] shooting proposition.

The record demonstrates an agreement whose terms were fully negotiated by both parties with more than merely incidental involvement of the State of South Carolina as an area of part performance of the contract. The Court, therefore, agrees with the district court that § 36–2–803(1)(g) of the South Carolina long-arm statute permits the exercise of personal jurisdiction over Neiman-Marcus.

The Court also agrees with the court below that exercise of jurisdiction over Neiman-Marcus in this case would not violate

due process. Due process requires that if a defendant is not present within the state forum he must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

In *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1945), the Supreme Court ruled that personal jurisdiction could be exercised over a non-resident defendant consistently with due process "if the suit was based on a contract which had substantial connection" with the forum state. That broad statement was qualified in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), where the Court stated that "there must be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state."

Based on the standards set forth in *McGee* and *Hanson*, it is arguable that the contract between Kimbrel and Neiman-Marcus, standing alone, would be insufficient to subject Neiman-Marcus to suit in South Carolina. Although there were phone calls and correspondence between Kimbrel in South Carolina and Neiman-Marcus in Texas, all face-to-face negotiations took place in Texas. Furthermore, the parties apparently contemplated that Kimbrel would deliver the miniatures to Neiman-Marcus in Texas, with payment to Kimbrel being made on delivery. At no time did any agent of Neiman-Marcus visit South Carolina in connection with this agreement. *Compare Deering Milliken Research Corp. v. Textured Fibres, Inc.*, 310 F.Supp. 491 (D.S.C.1970).

Neiman-Marcus has other contacts with South Carolina, however. Five thousand thirty-four (5,034) South Carolina residents have charge accounts with Neiman-Marcus. These charge account customers were all mailed Neiman-Marcus' 1977 Christmas cat-

alogs. They presumably also received at least some of the twenty-five other catalogs and customer mailings sent by Neiman-Marcus in 1977–78. In 1977, mail orders to Neiman-Marcus from South Carolina customers totaled $59,235.00. This amount, while small in relation to Neiman-Marcus' total sales for that year, is not insubstantial. These systematic and regular contacts with South Carolina, combined with the contract between Neiman-Marcus and Kimbrel which calls for part-performance in South Carolina, provide sufficient minimum contacts with South Carolina so that the exercise of personal jurisdiction over Neiman-Marcus does not offend traditional notions of fair play and substantial justice.

AFFIRMED.