**DOUGLAS BATTERY MANUFACTURING COMPANY, Plaintiff,**

v.

**TAYLOR AUTO SUPPLY, INC., Defendant.**

**No. C–81–240–WS.**

United States District Court, M. D. North Carolina, Winston-Salem Division.

April 28, 1982.

George L. Little, Jr., and F. Joseph Treacey, Jr., of Petree, Stockton, Robinson, Vaughn, Glaze & Maready, Winston-Salem, N.C., for plaintiff.

Eugene H. Phillips, Winston-Salem, N.C., for defendant.

**MEMORANDUM OPINION AND ORDER**

HIRAM H. WARD, District Judge.

Plaintiff Douglas Battery Company, a North Carolina corporation, filed this action against Taylor Auto Supply, Inc., a Virginia corporation, seeking only a declaratory judgment of its own non-liability to defendant. On June 16, 1981, defendant moved the Court to dismiss this action for lack of personal jurisdiction over it, Fed.R.Civ.P. 12(b)(2), which the Court will grant.

The defendant's diminutive contacts with North Carolina are revealed in the parties' affidavits and discovery. However, the na-

ture of the plaintiff's claim shapes and even reduces the significance of those contacts. To explain, the plaintiff's allegations and claim for relief follow.

In its Complaint (May 27, 1981), the plaintiff alleged:

For many years, Douglas has been engaged in the business of manufacturing and selling batteries from its principal place of business in Winston-Salem, North Carolina.

For a number of years prior to 1980, defendant Taylor was a customer of plaintiff Douglas, purchasing batteries from Douglas for sale in its stores and to various customers.

In 1979, plaintiff Douglas successfully solicited Franklin Equipment Company ("Franklin") of Franklin, Virginia, to purchase the Douglas battery. However, rather than selling this account directly, Douglas turned this new account over to defendant Taylor and Franklin began purchasing Douglas batteries from defendant Taylor.

On or about May 21, 1980, Taylor informed Douglas that it was dropping the Douglas line of batteries and would be selling a competing brand of battery in the future. No exceptions to this new policy were stated by Taylor as to any customer or location.

After it was informed by Taylor that Taylor was dropping the Douglas line of batteries, plaintiff Douglas called upon Franklin and was successful in persuading Franklin to continue purchasing Douglas batteries, directly from Douglas.

An actual and justiciable controversy currently exists between plaintiff Douglas and defendant Taylor in that Taylor alleges and contends that it never told Douglas that it was switching all of its stores and the Franklin account to a competing brand of battery, that it was only switching away from Douglas batteries in two locations, excluding the Franklin account, that it had a written contract with Franklin to sell it Douglas batteries,

that Douglas intentionally and maliciously interfered with Taylor's contract with Franklin by selling the Douglas battery directly to Franklin, resulting in alleged compensatory damages to Taylor in the amount of $200,000.00, all of which Douglas denies. Taylor has threatened Douglas with litigation over this alleged interference with contractual relations and has specifically threatened to sue Douglas for $200,000.00 in compensatory damages and an additional $50,000.00 in punitive damages.

In its prayer for relief plaintiff sought a declaratory judgment pursuant to Title 28 U.S.C. § 2201 that it has not tortiously or otherwise interfered with any valid contractual relationship between Taylor and Franklin and that it is not liable to Taylor in any manner or in any amount arising out of the transaction pleaded in this Complaint.

In attempting to negotiate the parties' differences prior to any lawsuit being filed, defendant's counsel showed plaintiff's counsel a draft complaint that defendant had prepared for filing against plaintiff in Virginia. Immediately thereafter, plaintiff filed its complaint for declaratory judgment of nonliability in this Court. Defendant filed its complaint for damages for Douglas Battery's alleged tortious conduct in the Eastern District of Virginia two days later.[1] Defendant's Memorandum with attachments (June 16, 1981).

The Court will briefly outline the defendant's contacts with North Carolina, accepting totally plaintiff's evidence on point. Philip L. Taylor, defendant's president, testified in his Affidavit (September 15, 1981) that defendant's sole business was selling automobile, truck and tractor parts at wholesale and retail. It conducts its business entirely at three stores located in different towns in Virginia. All of the defendant's employees work at one of the three stores in Virginia. Defendant has no office or place of business in North Carolina

---

1. Apparently the parties' same dispute is pending in the Virginia lawsuit. Answer at 3 (June 22, 1981); Affidavit of Peggy L. Reeks (June 16, 1981) with attached complaint.

and sends no agents or employees into North Carolina to solicit business or to perform any other service. Defendant delivers no goods, performs no other work or services in North Carolina, and conducts no advertising in North Carolina. However, between May 28 and November 1980, without the defendant's knowledge, a yellow pages advertisement appeared in the Rocky Mount, North Carolina, telephone directory. The advertisement was not continued and ran for no other period of time. Although defendant makes no sales in North Carolina, as many as 33 persons have traveled from North Carolina to Virginia to purchase goods from one of defendant's stores during the period from 1978 to 1980, totaling $15,031.19. *See* Plaintiff's Brief at 7 (referring to other discovery documents) (September 2, 1981).

Defendant purchased automobile, truck and tractor parts from various sources located in numerous states, including North Carolina. *See, e.g.,* Affidavit of James Wessley Price (September 2, 1981) (hereinafter Price Affidavit); Affidavit of David Dodd (September 2, 1981); Affidavit of Thomas S. Douglas, III (September 2, 1981); Plaintiff's Brief at 4–7 (referring to other discovery documents). During the period from 1968 until July 1980, defendant purchased over $500,000.00 in batteries from the plaintiff. Defendant would buy the batteries from the plaintiff's delivery trucks in Virginia and receive billing later, or telephone orders to plaintiff in North Carolina for delivery to Virginia. Plaintiff's Brief at 4 & 5 (referring to discovery documents). Defendant has telephoned and mailed matter into North Carolina in its efforts to purchase inventory from suppliers such as plaintiff. Defendant's president has entered this state on at least one occasion to discuss purchasing goods from the Hastings Company in King, North Carolina, a supplier of automobile parts totally unrelated to the plaintiff or this lawsuit. Price Affidavit at 1.

This Court lacks power under the Due Process Clause, and it would be unfair to assert personal jurisdiction over the defendant for this claim. The Court need not construe the applicable North Carolina long-arm statute, but must determine if exercising personal jurisdiction in this case comports with due process. *Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 426 (M.D.N.C.1977); *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 231 S.E.2d 629 (1977). The starting point for analysis is that "the defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend "traditional notions of fair play and substantial justice." ' " *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980), *quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1940).

■ The Court should consider such factors as reasonableness, fairness, federalism, convenience to the parties, and availability of other forums in determining whether to assert personal jurisdiction over a defendant in a given case. *See* 4 C. Wright & A. Miller, *Federal Practice & Procedure* § 1069, p. 255 (1969). Plaintiff has urged the court to consider "three primary factors, namely, the quantity of the [defendant's] contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts . . . and . . . two others, interest of the forum state and convenience." Plaintiff's Brief at 10, *citing Fieldcrest Mills, Inc. v. Mohasco Corp.,* 442 F.Supp. 424, 427, quoting *Aftanase v. Economy Baler Co.,* 343 F.2d 187 (8th Cir. 1965) (Blackmun, J.).

■ The nature and quality of defendant's contacts with North Carolina and their lack of connection with the plaintiff's cause of action convince the Court that asserting personal jurisdiction over the defendant for this cause of action would be unfair. Defendant only has contact with North Carolina as a purchaser of goods for resale in Virginia. Even more significantly, the source of the defendant's contacts and their connection with the plaintiff's cause of action are far removed and tenuous. Plaintiff's claim that it is not liable to de-

fendant for tortiously interfering with a contract existing in Virginia between two Virginia entities has no significant connection with North Carolina or defendant's commercial contacts here. *See Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296–97 (1958).

Whether or not plaintiff tortiously interfered with a Virginia contract has little to do with defendant purchasing various goods from North Carolina suppliers. The fact that some 33 North Carolina residents have traveled to Virginia and patronized one of defendant's stores near the Virginia border reveals no purposeful activity by defendant to enter into or conduct any activity in this state. Similarly, defendant's president's entry into this state to discuss purchases of goods from an uninvolved third party supplier and the brief, unauthorized appearance of a yellow pages advertisement in one town's telephone directory bear no meaningful relation to an alleged tort committed, if at all, by plaintiff in Virginia. *Accord, Kulko v. California Superior Court*, 436 U.S. 84, 93, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 142 (1978) (temporary visits to state insufficient basis for assertion of in personam jurisdiction over *unrelated* action).

The issue of plaintiff's tortious conduct does not arise from the defendant's purchases or sales of goods in North Carolina commerce. *Accord, World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 502; *cf. Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976) (cause of action arose from "act" or transaction "consumated in the forum state"); *Munchak Corp. v. Riko Enterprises, Inc.*, 368 F.Supp. 1366, 1374 (M.D.N.C.1973) (unrelated activities of defendant in forum state do not constitute minimum contacts). Nor does the plaintiff's claim arise out of any purposeful, regular or systematic efforts by defendant to benefit from the laws of North Carolina by entering the market and purchasing or providing goods for use here. *See Appleyard v. Transamerican Press, Inc.*, 539 F.2d 1026, 1029 (4th Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977) (calculated and ordered program of distribution in forum state gave rise to plaintiff's claim); *Fieldcrest Mills, Inc. v. Mohasco Corp.*, 442 F.Supp. 424, 428 (defendant's activity in forum state gave rise to plaintiff's claims); *McCoy Lumber Industries, Inc. v. Niedermeyer-Martin Co.*, 356 F.Supp. 1221 (M.D.N.C.1973) (extensive and regular commercial transactions gave rise to plaintiff's claim); *cf. Kimbrel v. Neiman-Marcus*, 665 F.2d 480 (4th Cir. 1981) (systematic and regular contacts combined with part performance of contract in forum state). Defendant's few contacts with North Carolina do not give rise to plaintiff's claim for relief; they cannot give the Court power to assert personal jurisdiction over the defendant for this claim consistent with due process and traditional notions of fair play and substantial justice.

The Virginia Court can fairly compel the parties to litigate their dispute over damages. Virginia law should apply to determine if plaintiff tortiously interferred with a contract between two Virginia entities. The Virginia Court has much greater interest in determining liability for the alleged tortious interference with a Virginia contract than has this Court in declaring nonliability. As a alternative ground for dismissal, the Court would in its discretion deny declaratory relief, in favor of the parties fully resolving their differences in the Virginia litigation. *Allied-General Nuclear Services v. Commonwealth Edison Co.*, 675 F.2d 610 (4th Cir. 1982).

IT IS, THEREFORE, ORDERED that defendant's motion to dismiss for lack of personal jurisdiction be, and the same hereby is, GRANTED.

An Order dismissing this action will be entered accordingly.