704 F.2d 1296
 Glenda C. BROWN, Appellant,
v.
AMERICAN BROADCASTING CO., INC. Margaret Osmer-McQuade,
Kathleen T. Gardner, David L. Holton, Margaret
Dixon, Val J. Halamandaris, Robert
Weiner, Appellees.
Glenda C. BROWN, Appellee,
v.
AMERICAN BROADCASTING CO., INC., Margaret Osmer-McQuade, Appellants,
and
Kathleen T. Gardner, David L. Holton, Margaret Dixon, Val J.
Halamandaris, Robert Weiner, Defendants.
 Nos. 82-1192, 82-1236.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 10, 1982.
Decided April 11, 1983.
 
 John P. McGeehan, Alexandria, Va. (Caruthers, Buscher & Caruthers, P.C., Burke, Va., on brief), for appellant.
 Alan I. Baron, P.C., Baltimore, Md. (Ellen Scalettar, Finley, Kumble, Wagner, Heine, Underberg & Casey, Washington, D.C., on brief), and Steven Ross, Washington, D.C. (Stanley Brand, Michael Murray, Office of Counsel to the Clerk, U.S. House of Representatives, Washington, D.C., on brief), for appellees.
 Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 CHAPMAN, Circuit Judge:
 
 
 1
 Plaintiff and defendants appeal various rulings made by the district court during the trial of this action for defamation, invasion of privacy, interference with a business, conspiracy and violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. Secs. 2510 et seq. (1976 and Supp.1979). The district judge held that all but two of appellant's causes of action were barred by the applicable statutes of limitation and the jury returned a verdict for defendants on the remaining claims.
 
 
 2
 Plaintiff argues (1) that the district court improperly applied Virginia's one and two-year statutes of limitations in dismissing her actions for defamation, conspiracy to injure her reputation, invasion of privacy and illegal electronic surveillance under the Omnibus Crime Control Act; and (2) that the district court improperly excluded the testimony of her expert witness because she failed to comply with a pre-trial order.
 
 
 3
 The defendants appeal three rulings of the district court: (1) the court's application of Virginia's five year statute of limitations to plaintiff's claim for conspiracy to interfere with her business and intentional interference with her business; (2) the court's holding that Virginia does have a common law right of privacy; and (3) the court's ruling that personal jurisdiction was proper over defendant Osmer-McQuade under the Virginia long arm statute. The defendants also raise an issue not addressed by the district court: whether defendants are protected by the consent exception to the prohibition against unauthorized electronic surveillance contained in the Omnibus Crime Control Act, 18 U.S.C. Sec. 2511(2)(d).
 
 
 4
 For the reasons stated below, we affirm the district court's application of Virginia's two year statute of limitations in dismissing plaintiff's claims for defamation and conspiracy to injure her reputation. We also affirm the court's ruling that personal jurisdiction was proper over defendant Osmer-McQuade under Virginia's long-arm statute.
 
 
 5
 However, we reverse the district court's holding that a common law action for invasion of privacy exists in Virginia. Because of our holding on this point, it is unnecessary for us to consider whether the district court correctly applied Virginia's two year statute of limitations in dismissing this claim.
 
 
 6
 We also reverse the district court's application of Virginia's five year statute of limitations to plaintiff's claims for conspiracy to interfere with her business and intentional interference with her business.
 
 
 7
 Further, we reverse the district court's application of the two-year statute of limitations to plaintiff's claim for illegal electronic surveillance because the court failed to consider the crucial question of when the statute of limitations begins to run with respect to this claim. On remand, it will also be necessary to consider whether the defendants are protected by the consent exception to the statutory liability for unauthorized surveillance. Finally, our remand of this case allows a simple resolution of plaintiff's appeal from the district court's exclusion of the testimony of her expert. Because the case will have to be retried unless the district court finds that plaintiff's cause of action under the Omnibus Crime Control Act is clearly barred by the statute of limitations, we direct the district court to allow the parties time for additional discovery in the event the case is retried.
 
 
 8
 * The incidents on which this action is based arose out of a 1978 investigation by the House of Representatives Select Committee on Aging into fraudulent sales practices in the sale of insurance to the elderly. During the investigation, defendants Kathleen T. Gardner, Val J. Halamandaris and Robert Weiner, who were employees of the House committee, gave ABC exclusive access to the committee's activities and the work produced by the committee.
 
 
 9
 In November 1978 committee employees staged a meeting in Arlington, Virginia at the house of defendant David L. Holton, an employee of the committee, between the plaintiff, defendant Gardner and defendant Margaret Dixon, also a committee employee. The plaintiff's presence at the meeting was arranged by one of the committee's employees who telephoned Ms. Brown's manager at Bankers Life & Casualty Company and stated that her "mother-in-law" wanted someone to review her health insurance policies. The meeting between the plaintiff, Ms. Dixon and Ms. Gardner was secretly videotaped and recorded by ABC employees. ABC edited the one and one-half hour meeting to approximately ten seconds and broadcast the segment on November 27 and 29, 1978. Defendant Margaret Osmer-McQuade wrote and reported the story.
 
 
 10
 The broadcast contained film of Ms. Brown talking with committee investigators followed by a statement of Osmer-McQuade that plaintiff was "overloading" defendant Dixon with insurance. It does not appear from the record that the broadcast identified Ms. Brown in any way other than through the use of her picture as contained in this film.
 
 
 11
 Plaintiff filed this action January 27, 1981 in the United States District Court, alleging five causes of action: (1) conspiracy to injure her reputation and interfere with her business of selling insurance; (2) violation of the Federal Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. Sec. 2510 et seq. (1976 and Supp.1979); (3) intentional interference with her insurance business; (4) violation of her right of privacy; and (5) defamation. The district court dismissed plaintiff's claims for defamation, invasion of privacy, conspiracy to injure her reputation, and illegal electronic surveillance holding that these claims were barred by Virginia's one and two-year statutes of limitation for personal injury actions, Va.Code Ann. Secs. 8.01-243(A) and 8.01-248 (Michie 1977). The remaining claims, intentional interference with plaintiff's business and conspiracy to interfere with plaintiff's business, were tried before a jury. The jury returned a verdict for all the defendants, and both plaintiff and defendants appealed from various rulings of the district court.
 
 II
 
 12
 We address first plaintiff's argument that the district court was incorrect in applying Virginia's one and two-year statutes of limitation to dismiss her claims for defamation, and conspiracy to injure her reputation. We will address separately plaintiff's claim that the district court improperly applied the two-year statute of limitation to her claim for illegal electronic surveillance.
 
 
 13
 With jurisdiction based upon diversity of citizenship, the court must look to Virginia law for a determination of both the applicable statute of limitations and the time at which a claim accrues under the applicable statute. See Ragan v. Merchants Transfer and Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949). Ms. Brown does not dispute that the correct statute of limitations to be applied is either Virginia's one or two-year statute for personal injury claims. Va.Code Ann. Secs. 8.01-248 and 8.01-243(A).
 
 
 14
 Plaintiff argues that the district court was incorrect in holding that the date of accrual for her claim under Virginia law was the date of the ABC broadcasts, November 27 and 29, 1978. Ms. Brown did not file her complaint until January 27, 1981, so her claims are clearly barred under either the one or two-year statute if the district court was correct in holding that the claims accrued simultaneously with the broadcasts.
 
 
 15
 Plaintiff argues that her claims did not accrue until September 1980 when she first learned of the broadcast and became emotionally upset and embarrassed so that her ability to answer telephone sales inquiries was affected. In support of her argument, Ms. Brown cites the Virginia rule for accrual of personal injury claims, that the statute of limitations does not commence to run against a claim for personal injury until the plaintiff is actually injured by defendant's wrongful act, despite the earlier occurrence of the wrongful act. Locke v. Johns-Manville Corp., 221 Va. 951, 275 S.E.2d 900 (1981). The rationale of this rule is that the statute of limitations cannot begin to run against a claim until all the elements of the cause of action exist and that one of the essential elements of a cause of action for personal injury is the injury itself. See Locke, 221 Va. at 955, 275 S.E.2d at 904.
 
 
 16
 However, this rule does not help plaintiff avoid the statute of limitations. First, emotional distress is not a necessary element of a cause of action for defamation or conspiracy to injure a person's reputation. If persons watching either broadcast recognized plaintiff and she was defamed or her reputation damaged thereby, such injury was immediate. Accordingly, the accrual of these two claims was not dependent on plaintiff's experiencing emotional distress when she learned of the broadcasts. All the necessary elements of these two claims were present, if they were ever present, upon the broadcast of the allegedly false and defamatory statement about the plaintiff on November 27 and 29, 1978, and the statute of limitations commenced to run on these dates.
 
 
 17
 Second, under Virginia law, the statute of limitations does not accrue separately for each set of damages which results from a wrongful act. Once a cause of action is complete and the statute of limitations begins to run, it runs against all damages resulting from the wrongful act, even damages which may not arise until a future date. See Street v. Consumers Mining Corp., 185 Va. 561, 39 S.E.2d 271 (1946), Louisville & N.R. Co. v. Saltzer, 151 Va. 165, 144 S.E. 456 (1928). All of plaintiff's claims were complete at the time of the broadcast. The emotional distress, which she claims to have felt upon learning of the broadcast, was only an additional injury resulting from the same wrongful act.
 
 III
 
 18
 We address next defendant's argument that the district court did not have personal jurisdiction over defendant Osmer-McQuade. A federal court must consider two questions in determining whether it has jurisdiction over an out-of-state defendant: (1) whether the long-arm statute of the state in which it sits provides authority for the assertion of jurisdiction; and (2) whether the assertion of jurisdiction under the long-arm statute is consistent with the due process requirements of the federal constitution. Kimbrel v. Neiman-Marcus, 665 F.2d 480 (4th Cir.1981).
 
 
 19
 The relevant part of Virginia's long arm statute, Va.Code Ann. Sec. 8.01-328.1 (Michie 1977), is as follows:
 
 
 20
 A. A court may exercise personal jurisdiction over a person, who acts directly, or by an agent, as to a cause of action arising from the person's
 
 
 21
 1. Transacting any business in this State;
 
 
 22
 * * *
 
 
 23
 * * *
 
 
 24
 3. Causing tortious injury by an act or omission in this State;
 
 
 25
 4. Causing tortious injury in this State by an act or omission outside this State if he regularly does or solicits business or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
 
 
 26
 Id. We shall discuss only section 8.01-328.1(A)(3).
 
 
 27
 Section (A)(3) has been interpreted as a "single act" statute, so that a single act committed within Virginia resulting in tortious injury subjects the action to the jurisdiction of the court. See Darden v. Hecks, 459 F.Supp. 727 (W.D.Va.1978); Willis v. Semmes, Bowen & Semmes, 441 F.Supp. 1235 (E.D.Va.1977); Cf. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971).
 
 
 28
 The district court found that Osmer-McQuade performed an act, or acts, in Virginia sufficient to subject her to jurisdiction on plaintiff's claims for intentional interference with her insurance business and conspiracy to interfere with that business. However, we hold below that these two claims should have been dismissed under Virginia's two year statute of limitations for personal injury actions and that this case must be remanded to the district court for the sole purpose of further proceedings on plaintiff's claim under the Omnibus Crime Control Act. Accordingly, we turn to consider whether Osmer-McQuade's actions were sufficient to confer jurisdiction over her on plaintiff's claim under the Omnibus Crime Control Act.[1]
 
 
 29
 Defendants argue that there was no evidence of an act or omission by Osmer-McQuade in Virginia which caused tortious injury to the plaintiff. However, defendants admit that Osmer-McQuade was a news correspondent for ABC in 1978 at the time plaintiff was secretly videotaped, that she was assigned to the "story" of the House Committee's investigation, that she was present at defendant Holton's home when plaintiff was videotaped for the sole purpose of reporting on the committee's investigation and that she included portions of the videotape of plaintiff in her report on the committee's investigation which was broadcast on ABC's nightly national news broadcast, World News Tonight, November 27 and 29, 1978. We find these actions by defendant sufficient to subject her to jurisdiction under section A(3). Osmer-McQuade was present at the time of the videotaping of plaintiff as an employee of the television network responsible for the videotaping with the sole purpose of reporting on the activities being videotaped. If the surveillance of plaintiff on November 2, 1978 did violate the Omnibus Crime Control Act, Osmer-McQuade had a sufficient part in the violation to be subject to jurisdiction under Virginia's long arm statute.
 
 
 30
 We must also consider whether a violation of the Omnibus Crime Control Act "causes tortious injury" within the meaning of section A(3) of the long arm statute so that this section may be used to assert jurisdiction over a defendant who violates the Crime Control Act by an act or omission in Virginia. Although this particular question has never been considered by the Virginia Supreme Court, that court has declared that the purpose of the Virginia long arm statute is to assert jurisdiction to the extent permissible under the due process clause of the federal Constitution. Kolbe, Inc. v. Chromodern Chair Co., 211 Va. 736, 180 S.E.2d 664 (1971). Further, at least one district court has held that a violation of the statute is a tortious act closely related to the tort of invasion of privacy. Awbrey v. Great Atlantic and Pacific Tea Co., 505 F.Supp. 604 (N.D.Ga.1980). We agree that a violation of the Crime Control Act is a tortious injury within the meaning of section A(3).
 
 
 31
 Finally, we must consider whether Osmer-McQuade had adequate contact with Virginia in connection with the facts underlying plaintiff's cause of action to make the exercise of jurisdiction over her consistent with due process under the federal Constitution. Due process requires that a defendant who is not present within the forum state "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278 (1940); World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 580, 62 L.Ed.2d 490 (1980); Kimbrel v. Neiman-Marcus, 665 F.2d 480 (4th Cir.1981). Due process does not preclude assertion of jurisdiction over a defendant based on a single transaction if the transaction gives rise to the cause of action asserted by the plaintiff. Hardy v. Pioneer Parachute Co., 531 F.2d 193 (4th Cir.1976). See McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).
 
 
 32
 Although the defendant's only contact with Virginia was through her presence at the November 2, 1978 meeting, plaintiff's cause of action, if she has one, arises out of the videotaping of that meeting. This single transaction provides adequate contact between defendant and the forum state so that the court's assertion of personal jurisdiction over Osmer-McQuade does not offend due process.
 
 IV
 
 33
 The district court assumed that a common law action for invasion of privacy existed in Virginia and held that any privacy claim which plaintiff had was barred by Virginia's two-year statute of limitations for personal injury actions. However, the district court failed to consider the question of when plaintiff's claim for invasion of privacy accrued. Plaintiff claims that she did not learn of the broadcast by ABC until September 1980, when she became emotionally upset and embarrassed by the knowledge of the broadcast. Emotional distress and embarrassment are key elements of two of the recognized actions for invasion of privacy,[2] an action for intrusion upon a person's private affairs, and an action for public disclosure of embarrassing facts about the plaintiff. Time Inc. v. Hill, 385 U.S. 374, 384 n. 9, 87 S.Ct. 534, 540 n. 9, 17 L.Ed.2d 456; Bernstein v. National Broadcasting Company, 129 F.Supp. 817, 825 (D.D.C.1955), aff'd., 232 F.2d 369 (D.C.Cir.1956), cert. denied 352 U.S. 945 (1956). Accordingly, a strong argument can be made that, under Virginia law, a claim for either of these two types of invasion of privacy would not accrue until the plaintiff had knowledge of the publication of the allegedly offensive material because, until that time, a necessary element of the plaintiff's cause of action, the injury, would be missing. See Locke v. Johns-Manville Corp., 221 Va. 951, 275 S.E.2d 900 (1981). We need not reach this question, though, if Virginia does not recognize a common law action for invasion of privacy.
 
 
 34
 Virginia has enacted a statutory right of privacy, Va.Code Ann. Sec. 8.01-40 (Michie 1977), which prohibits the use of a person's name, portrait or picture, without his consent, for commercial purposes. The Virginia Supreme Court has not construed this statute or addressed the question of whether a right of privacy exists outside the statute. However, three federal courts have addressed the second question and all three have concluded that an action for invasion of privacy in Virginia is limited to the right created by Va.Code Ann. Sec. 8.01-40. Falwell v. Penthouse International, Ltd., 521 F.Supp. 1204 (W.D.Va.1981); Evans v. Sturgill, 430 F.Supp. 1209 (W.D.Va.1977); Bernstein v. National Broadcasting Co.
 
 
 35
 Plaintiff argues that the three cited decisions were based on a strict interpretation by New York courts of a New York statute very similar to the Virginia statute and that New York courts have recently abandoned this strict approach and recognized a common law action for invasion of privacy outside the statute. Accordingly, this court should hold that the Virginia Supreme Court would follow New York's lead and find that a common law action for invasion of privacy exists in Virginia. We find plaintiff's argument unconvincing for two reasons.
 
 
 36
 First, the New York decisions upon which plaintiff relies are decisions of federal district courts and the Second Circuit Court of Appeals. These decisions were based, not on the court's construction of decisions by New York courts but on the courts' predictions that New York courts would follow the majority position and recognize a broader right for invasion of privacy. New York courts have failed to respond to this invitation. Recently, in Arrington v. The New York Times Company, 55 N.Y.2d 433, 434 N.E.2d 1319, 449 N.Y.S.2d 941 (1982), the New York Court of Appeals, while not stating explicitly that a common law privacy action does not exist in New York, observed that it has consistently refused to recognize such a right.
 
 
 37
 Second, even if New York courts had recognized a common law right of privacy, such action would simply be one indication of what Virginia's court may do. In view of the continued silence of the Virginia Supreme Court and the decisions of three federal courts holding that Virginia does not have a common law right of privacy, we are not willing to take the step urged by plaintiff.
 
 
 38
 Plaintiff also contends that she has a cause of action under section 8.01-40 because defendants used her picture without her consent for commercial purposes. However, plaintiff did not allege a cause of action under the statute in her complaint and she cannot raise a new claim for the first time on appeal.
 
 V
 
 39
 Virginia law provides a five year statute of limitations for injury to property, Va.Code Ann. Sec. 8.01-243 B (Michie 1977), in contrast to the one or two-year statute which applies in cases of personal injury actions, Va.Code Ann. Secs. 8.01-243 and 8.01-243 A (Michie 1977). The district court held that plaintiff's claims for intentional interference with her insurance business and conspiracy to interfere with her insurance business were actions for injury to property and were governed by the five year statute.
 
 
 40
 Defendants argue that the district court was incorrect because that statute is only applicable to actions for injury to property where the injury to property is the direct and immediate result of the wrongful conduct. Evans v. Sturgill, 430 F.Supp. 1209 (W.D.Va.1977). Where the injury to property is an indirect or consequential injury resulting from a direct injury to the person, the one or two-year statute of limitation for personal injury applies Evans; Holdford v. Leonard, 355 F.Supp. 261 (W.D.Va.1973). According to defendants, plaintiff's actions for intentional interference with her business and conspiracy to interfere with her business are simply actions to recover for consequential damages to her insurance business resulting from the alleged damage to her reputation caused by defendants' broadcast.
 
 
 41
 We find defendants' argument convincing. Although Evans and Holdford were decided under Virginia's old statute of limitations, the analysis applied in those cases is equally applicable to the present case. Under Virginia's old statute of limitations the resolution of the question of which limitations period applied to a particular action turned on the question of whether or not the cause of action would survive the injured party. The survival of an action depended upon whether or not the action was an injury to property or to the person. Accordingly, the resolution of the question of survival in Evans depended on the same distinction between actions for injury to the person and actions for injury to property which it is necessary to make under the current Virginia statute of limitations.
 
 
 42
 As the analysis in Holdford points out, the Virginia Supreme Court has been extremely technical in its determination of whether the damage for which a plaintiff seeks to recover is a direct injury to property and thereby qualifies for the benefit of the five year statute of limitations. In order for the five year statute to apply, the following facts, among other things, must be found: (1) the injury "must be against and affect directly the plaintiff's property" Holdford, 355 F.Supp. at 264; (2) "the plaintiff must sue only for the direct injury" Id.; and (3) the injury, to qualify as a direct injury, must be the very first injury which results from the wrongful act. Id.
 
 
 43
 The plaintiff's two causes of action for injury to her business fail all three of the above tests. Even if the Virginia Supreme Court were less strict in its definition of what constitutes direct injury to property for purposes of the five year statute, plaintiff's causes of action could not qualify as direct injury to her property. The allegations of damage to her business made by plaintiff are nothing more than consequential damages resulting from the alleged injury to her reputation.
 
 VI
 
 44
 The final statute of limitations question which we must address is when plaintiff's claim for illegal electronic surveillance under 18 U.S.C. Sec. 2520 (1976) accrued. As with plaintiff's claims for defamation and conspiracy to injure her reputation, neither party disputes that the correct statute of limitations to be applied is either Virginia's one or two-year statute for personal injury claims.
 
 
 45
 The district court assumed that plaintiff's claim for illegal surveillance was governed by the Virginia rule on accrual of personal injury claims so that the cause of action accrued on the date of the ABC broadcast. However, because plaintiff's claim is a federal cause of action, the question of when it accrued is a question to be resolved by federal law. United Klans of America v. McGovern, 621 F.2d 152 (5th Cir.1980); Smith v. Nixon, 606 F.2d 1183 (D.C.Cir.1979).
 
 
 46
 Only a small number of federal courts have considered the question of when a cause of action for illegal surveillance accrues,[3] and these courts have chosen to apply different rules. Several of the decisions have concluded that a claim for illegal surveillance under the Crime Control Act accrues when the plaintiff discovers, or by the exercise of due diligence could have discovered, that his communications had been intercepted. Awbrey v. Great Atlantic and Pacific Tea Company, 505 F.Supp. 604, 609 (N.D.Ga.1980); Alioto v. Holtzman, 54 F.R.D. 602, 604 (E.D.Wis.1972). See Smith v. Nixon. The other decisions have concluded that the discovery rule is inapplicable to a claim for illegal surveillance, that such a claim accrues as soon as the wrong is committed, with the provision that the running of the statute may be tolled by fraudulent concealment. Clark v. United States, 481 F.Supp. 1086, 1094 (E.D.N.Y.1979); Cole v. Kelley, 438 F.Supp. 129, 138 (C.D.Cal.1977).
 
 
 47
 In view of the nature of the tort in question, we find that the discovery rule is the most appropriate rule to be applied to a claim of the kind before us. Electronic surveillance is by its very nature a tort which is concealed from a potential plaintiff. Unless the defendant discloses his activity to the plaintiff, or uses the information he obtains in a way which should put the plaintiff on notice of his activity, the tort may remain concealed.
 
 
 48
 It may well be that the facts developed on remand of this case will provide a clear basis for the court to determine when plaintiff knew or should have known of the existence of her cause of action. However, based on the facts presently before us, we must conclude that the issue of when plaintiff knew, or reasonably should have known of the existence of her cause of action, is a question to be resolved by a jury. See Smith v. Nixon, 606 F.2d at 1191; Awbrey, 505 F.Supp. at 604.
 
 
 49
 The broadcast of plaintiff's picture on November 27 and 29, 1978 certainly weighs against her claim that she was ignorant of the surveillance and its subsequent disclosure until September 1980. However, it appears from the record that plaintiff's name was never used during the broadcast and that there was no other publicity which would have served to put plaintiff on notice of defendants' activities. Finally, we find it interesting that none of the defendants made any effort to notify plaintiff of the videotaping of her interview and its subsequent use in their broadcast.
 
 VII
 
 50
 Defendants raise an additional defense to Brown's claim under the Crime Control Act based on the consent provision of 18 U.S.C. Sec. 2511(2)(d). This section provides that the Act's prohibition against electronic surveillance shall not apply when one of the parties to a wire or oral communication is the one conducting the surveillance or where one of the parties consents to the surveillance.
 
 
 51
 Plaintiff does not dispute that the employees of ABC and the House Committee consented to the interception of her conversation. She points, however, to the further language of section 2511(2)(d) which provides that the consent exception shall not apply if a communication "is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any state or for the purpose of committing any other injurious act."
 
 
 52
 Defendants' purpose in taping and broadcasting the meeting of November 2 clearly presents a factual issue for the jury. Accordingly, we must reject defendants' argument that they are protected by the consent provision of section 2511(2)(d) and remand this case to the district court for further proceedings on plaintiff's claim under the Crime Control Act. See Benford v. American Broadcasting Co., 502 F.Supp. 1159, 1162-63 (D.Md.1980), aff'd., 661 F.2d 917 (4th Cir.1981), cert. denied, 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981).
 
 
 53
 Finally, we resolve the issue of whether the district court improperly excluded testimony from plaintiff's expert by directing the court to allow the parties time for additional discovery on remand. Because we have concluded that plaintiff's claims for intentional interference with her business and conspiracy to interfere with her business should have been dismissed under Virginia's one or two-year statute of limitations it is unnecessary for us to consider whether the district court improperly excluded the testimony of plaintiff's expert during the trial of these claims.
 
 
 54
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 
 [1]
 Our consideration of jurisdiction over the defendant under the Crime Control Act is not intended to suggest that jurisdiction as to plaintiff's time barred claims would not also confer jurisdiction as to her claim of illegal surveillance. We express no opinion on this point because we find that Osmer-McQuade's actions were sufficient to create jurisdiction under the Crime Control Act independently of plaintiff's other causes of action
 
 
 [2]
 Prosser states that the tort of invasion of privacy takes four different forms: (1) unreasonable intrusion upon the plaintiff's seclusion, or solitude, or into his private affairs; (2) public disclosure of true, embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation of plaintiff's name or likeness for commercial purposes. W. Prosser, The Law of Torts Sec. 117 (4th ed. 1971)
 
 
 [3]
 All of these decisions have dealt with claims for alleged illegal interceptions of wire communications while the present claim concerns an alleged illegal interception and disclosure of an oral communication. This factual difference does not affect the analysis of the issues before us