79 F.3d 1166
 39 U.S.P.Q.2d 1592
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
PETROSCAN AB, Plaintiff-Appellant,
v.
MOBIL CORPORATION, Mobil Oil Corporation and Mobil
Exploration and Producing Services, Inc.,
Defendants-Appellees.
 No. 95-1109.
 United States Court of Appeals, Federal Circuit.
 March 4, 1996.
Rehearing Denied; Suggestion for Rehearing In Banc Declined
May 10, 1996.
 
 Before ARCHER, Chief Judge, PLAGER, and SCHALL, Circuit Judges.
 DECISION
 SCHALL, Circuit Judge.
 
 
 1
 Petroscan AB ("Petroscan"), owner of U.S. Patent No. 5,001,634 (the " '634 patent"), appeals from the final judgment of the United States District Court for the Eastern District of Virginia in Civil Action No. 94-501-A. The district court granted summary judgment of non-infringement, with respect to both literal infringement and infringement under the doctrine of equivalents, in favor of Mobil Corporation, Mobil Oil Corporation, and Mobil Exploration and Producing Services, Inc. (collectively, "Mobil") in Petroscan's action against Mobil for patent infringement. The district court also granted Mobil's motion to dismiss Petroscan's breach of confidential relationship claim against Mobil, on the ground that the claim was barred by the applicable statute of limitation.[1] For the reasons set forth below, we affirm the district court's grant of summary judgment of non-infringement, reverse its dismissal of the breach of confidential relationship claim, and remand for further proceedings.
 
 DISCUSSION
 I.
 
 2
 Summary judgment is appropriate if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment de novo. Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). In determining whether summary judgment should have been granted on the question of infringement, we (1) review de novo the district court's claim construction; and (2) determine whether there is any genuine issue of material fact concerning whether a claim, as construed, is infringed by the accused device or process, literally or by the doctrine of equivalents. See Markman v. Westview Instruments, Inc., 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.) (in banc), cert. granted, 116 S.Ct. 40 (1995). If any such issues are present, summary judgment is inappropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 
 3
 The '634 patent, which has three claims, relates to a process for mapping sea level undulations. The mapping of such undulations is important for hydrocarbon prospecting. The one independent claim of the patent--claim one--reads in pertinent part as follows:
 
 
 4
 A method of making for an area a map or a representation of regional variations in the position of the geoid which have an amplitude less than about 1m that are caused by density variations in the underlying sea floor ..., said method comprising the steps of:
 
 
 5
 (a) obtaining height values which indicate the sea surface height in relation to a reference level and which have been calculated by means of altimeter data measured from a flying craft and by means of information about the orbits of the flying craft during measurement of the altimeter data;
 
 
 6
 (b) sorting out incorrect and improbable values; and
 
 
 7
 (c) adapting the height values corresponding to different orbits of the flying craft to one another, such that maximum agreement of height values is obtained in the crossing points of the orbits, whereby relative values of the geoid position are established, characterized by
 
 
 8
 (d) filtering off long-wave variations with a wave length exceeding about 200 km in the geoid position;
 
 
 9
 (e) amplifying variations in the geoid position which have a selected spread, said amplification including the steps of dividing the area into smaller areas, calculating the mean value of the values adapted in accordance with step (c) within the smaller areas, and subtracting within each smaller area the calculated mean value from each of said height values within said smaller area; and
 
 
 10
 (f) correcting the geoid position in respect of interference from the water depth.
 
 
 11
 Mobil's accused process also uses sea height values obtained and adapted from satellite data for hydrocarbon prospecting purposes. Mobil's process correlates these height values to a reference ellipsoid and corrects the values based on various parameters. A Fast Fourier Transform is then used to transform the corrected height values to frequency domain representations called "gravity anomaly values."[2] The "gravity anomaly values" are expressed in milligals. The Fast Fourier Transform is also used to filter off long wavelengths that are not of interest in hydrocarbon exploration, to amplify the gravity anomaly values at frequencies of interest in hydrocarbon exploration, and to correct the data for bathymetry and topography.
 
 II.
 A. Literal Infringement
 
 12
 Literal infringement of a patent's claim exists when the accused process includes every limitation of the claim. Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1582, 34 USPQ2d 1120, 1126 (Fed.Cir.), cert. denied, 116 S.Ct. 272 (1995). As seen above, step (e) of the '634 patent claims a procedure for "amplifying variations in the geoid position which have a selected spread" and describes specific steps for that amplification. Mobil does not perform these amplification steps. The step in Mobil's process corresponding to step (e) of the '634 patent uses a Fast Fourier Transform to transform corrected height values to "gravity anomaly values" expressed in milligals and to amplify such values that are at frequencies of interest in oil exploration. This transform results in "gravity anomaly values" expressed in milligals, whereas step (e) of the claim refers to the calculation of height values. Thus, summary judgment of non-infringement as to literal infringement was properly granted.
 
 
 13
 B. Infringement Under the Doctrine of Equivalents
 
 
 14
 A process may infringe a patent claim under the doctrine of equivalents if there are "insubstantial differences between the claimed and accused products or processes." Hilton Davis Chem. Co. v. Warner-Jenkinson Co., 62 F.3d 1512, 1521-22, 35 USPQ2d 1641, 1648 (Fed.Cir.1995) (in banc), cert. granted, 1995 WL 668878 (Feb. 26, 1996) (No. 95-728).
 
 
 15
 Under the doctrine of prosecution history estoppel, the doctrine of equivalents cannot be used to "reclaim" subject matter surrendered during the prosecution of the patent at issue. Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 870, 228 USPQ 90, 96 (Fed.Cir.1985). Application of prosecution history estoppel is a question of law. Wang Lab., Inc. v. Toshiba Corp., 993 F.2d 858, 867, 26 USPQ2d 1767, 1775 (Fed.Cir.1993). Further, "[t]he legal standard for determining what subject matter was relinquished is an objective one, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure the issuance of the patent." Haynes Int'l, Inc. v. Jessop Steel Co., 8 F.3d 1573, 1578, 28 USPQ2d 1652, 1657 (Fed.Cir.1993).
 
 
 16
 In granting summary judgment of non-infringement under the doctrine of equivalents, the district court reviewed the '634 patent's prosecution history. In so doing, it stated:
 
 
 17
 [A] reasonable competitor could have concluded that PetroScan gave up processes like Dr. Rapp's, which map sea surface height in absolute numbers above a reference ellipsoid and use gravitation measurements. There can be no dispute that PetroScan made ... representations to the [United States Patent and Trademark Office (hereinafter "PTO") ], in which it repeatedly distinguished its invention from prior art based on its use of relative (not absolute) values and height measurements in meters (not gravity measurements). The prosecution history ... reveals that this was the "primary area of dialogue between [PetroScan] and the PTO." Because Mobil is simply practicing the prior art that PetroScan sought to distinguish, PetroScan is estopped from asserting coverage of Mobil's process under the doctrine of equivalents.[3]
 
 
 18
 The district court correctly described the prosecution history of the '634 patent. Two passages from the prosecution history that the district court notes are particularly informative. The Information Disclosure Statement submitted in connection with the original patent application stated:
 
 
 19
 The present invention also provides ... improvements over Rapp's disclosure and the prior art references in general.... [I]n the present invention, the Applicants have not used the sophisticated methods for converting geoid altitudes in meter/centimeter into gravimetrical values in mGal. The Applicants have found that this conversion of potential surfaces into gravimetric values presupposes assumptions in actual practice which may cause considerable errors, and that such a conversion is unnecessary for analyzing the geoid's high-frequency spectrum.
 
 
 20
 The examiner rejected the original claims as obvious in light of the Vonbun and Boitnott references without mentioning Rapp. The original claims were then cancelled and new claims were substituted. In that context an attempt was made to further distinguish the Rapp references in the "Remarks" accompanying the amended claims:
 
 
 21
 Rapp's processing of the height values from the altimeter is similar to that of the applicant as regards the sorting out of erroneous and improbable values and the adaptation of height values corresponding to different paths. Rapp, however, converts his height values into gravitational force variations expressed in mgal. This conversion is understandable because in conventional gravimetry the result is obtained in mgal. According to the applicant, however, this conversion introduces errors.... Furthermore, it may be assumed ... that the gravitation equals the derivative of the potential, and that, for prospecting purposes, gravitation measurement is less reliable than measuring the potential, as does the applicant. The Rapp method and conventional gravimetry thus lead the expert away from the present invention.
 
 
 22
 These distinctions were repeated in the continuation-in-part application, and in the Information Disclosure Statement that was submitted after the continuation-in-part application was filed. Moreover, the '634 patent's description of the preferred embodiment differentiates that which is claimed by the '634 patent from the "prior art gravimetrical technique". The '634 patent's specification also provides an illustration of the differences between gravity acceleration data and geoid position height data, and describes the advantages of using geoid position data, as the '634 patent claims.
 
 
 23
 Petroscan argues that the examiner did not rely on the statements that Petroscan made to the examiner regarding working in meters rather than milligals. "Although actual reliance by the examiner need not be shown, if an estoppel is to rest upon argument made during the examination process, the circumstances must be such as to permit the inference that such reliance in fact occurred. A showing that the conduct in question played a material role in the issuance of the patent usually suffices." Zenith Lab., Inc. v. Bristol-Myers Squibb Co., 19 F.3d 1418, 1425 n. 8, 30 USPQ2d 1285, 1292 n. 8 (Fed.Cir.), cert. denied, 115 S.Ct. 500 (1994). In addition, "[e]stoppel may arise whether the change is made by amendment of the claims during prosecution, or by refiling the patent application with changed claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1219, 36 USPQ2d 1225, 1230 (Fed.Cir.1995).
 
 
 24
 As just seen, during the prosecution of the '634 patent, the claims submitted for examination were limited to operations on "height values" and values of the "geoid position." Following an obviousness rejection, language was added to the claims in a continuation-in-part application that expressly limited steps (c)-(f) to operations "in the geoid position." This language was retained in the claim that was eventually allowed. Based upon the explicit and repeated distinctions made between the claims and the Rapp references, in relation to working with height versus gravitational values, a reasonable competitor could believe that such distinctions were critical to the allowance of the '634 patent. Thus, a reasonable competitor could have concluded that the applicant for the '634 patent gave up coverage that includes Mobil's process, which uses gravity anomaly values. See Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 951-54, 28 USPQ2d 1936, 1939-41 (Fed.Cir.1993). The district court did not err in concluding that Petroscan is estopped from asserting coverage of Mobil's process under the doctrine of equivalents. Summary judgment on Count I was proper.
 
 III.
 
 25
 The parties agree that one of Virginia's statutes of limitation applies to Count III of Petroscan's complaint, but disagree as to which one. Section 8.01-243(B) of the Virginia Code is a five-year statute, relating to claims for "injury to property." Section 8.01-248 of the Code is a one-year statute; it covers claims not falling under a specific statute. In granting summary judgment for Mobil on Count III, the district court relied upon Brown v. American Broadcasting Co., 704 F.2d 1296, 1303-04 (4th Cir.1983). Brown holds that § 8.01-243(B) applies only in suits for "direct" injuries to property. The district court determined that Count III of Petroscan's complaint did not plead a direct injury to property because "[t]he alleged conduct of the defendants was not directed at the plaintiff's property nor did it have a direct impact on it." Accordingly, because the claim alleged in Count III arose more than one year before Petroscan's action was filed, the court dismissed the count as barred by the one-year statute of limitation.
 
 
 26
 We construe Count III of the complaint as a count in which Petroscan asserts that Mobil misappropriated Petroscan's trade secrets. Trade secret rights are generally recognized as property rights. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1003-04 (1984). The district court's ruling rests on the direct/indirect "injury to property" distinction stated in Brown, 704 F.2d at 1303-04. However, post-Brown case law and the Revisers' Note to § 8.01-243(B) of the Virginia Code reveal that the 1977 amendments to the section eliminated the direct/indirect "injury to property" distinction and that the section now applies to all "injuries to property." See Pigott v. Moran, 341 S.E.2d 179, 182 (Va.1986) ("under the straightforward provisions of § 8.01-243(B), '[e]very' action for 'injury to property' is governed by a five-year statute of limitations"); Revisers' Note to Virginia Code Ann. § 8.01-243 (Michie 1992) ("Subsection B [of § 8.01-243] takes the 5-year limitation of former § 8-24 and applies it to all tort actions for injury to property.... The one-year limitation in former § 8-24 for certain tort actions involving injury to property has been eliminated."). See also FDIC v. Cocke, 7 F.3d 396, 401 (4th Cir.1993) ("when a defendant's alleged conduct was directed at the plaintiff's property, and not at the plaintiff personally, the conduct constitutes an injury to property governed by section 8.01-243(B)"), cert. denied, 115 S.Ct. 53 (1994); Lavery v. Automation Management Consultants, Inc., 360 S.E.2d 336, 342 (Va.1987) (holding that an action seeking damages for unauthorized use of a person's name for trade purposes constituted an action for injury to property under § 8.01-243(B)). Because Count III of Petroscan's complaint alleges an "injury to property," it is covered by the five year statute of limitation set forth in § 8.01-243(B). We therefore hold that the district court erred in dismissing Count III of the complaint.[4]
 
 
 27
 In sum, the district court did not err in granting summary judgment of non-infringement in favor of Mobil. We therefore affirm that grant. The district court did err, however, in determining that Count III of Petroscan's complaint is time-barred. We therefore reverse the dismissal of Count III and remand the case to the district court for further proceedings consistent with this opinion.[5]
 
 
 28
 Each party shall bear its own costs.
 
 
 
 [1]
 Petroscan's complaint against Mobil was in three counts. Count I was for patent infringement; Count II sounded in promissory estoppel; and Count III was for breach of confidential relationship. In the district court, Count II was the subject of a voluntary dismissal without prejudice. Accordingly, the promissory estoppel claim is not before us
 
 
 [2]
 The Fast Fourier Transform is a computer-performed, mathematical technique which is used to convert an array of spatial values corresponding to spatial coordinates into an array of amplitude values corresponding to frequencies
 
 
 [3]
 The Rapp references are two journal articles examining geoid undulations and gravity anomalies observed from satellite altimeter data
 
 
 [4]
 We note that Petroscan has not asserted a cause of action under Virginia's Trade Secret Act and thus is not entitled to the "integral" three-year statute of limitations that is part of that act. See Va.Code Ann. § 59.1-340 (Michie 1992)
 
 
 [5]
 The parties have not discussed, and we do not address, what effect, if any, our affirmance of the district court's entry of summary judgment of non-infringement in favor of Mobil has on Count III of Petroscan's complaint